## GILMORE OIL CO., Limited, v. WOLVER-INE–EMPIRE REFINING CO.

### Patent Appeal No. 3223.

Court of Customs and Patent Appeals.
March 19, 1934.

.Jas. M. Naylor, of San Francisco, Cal. (Chas. R. Allen, of Washington, D. C., of counsel), for appellant.

· Emery, Booth, Varney & Whittemore, of New York City (Joseph Y. Houghton, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents reversing the decision of the Examiner of Interferences dismissing the notice of opposition of appellee and holding that appellant was entitled to the registration of a composite trade-mark, for use on lubricating motor oils, comprising a pictorial representation in full face of the head of a lion with wide-open mouth, together with the words "Lion Head" which appear to the immediate right of the picture.

In its application, appellant stated that it was the owner of the following registrations: No. 164,372, registered February 20, 1923, on an application filed July 10, 1922, of a composite trade-mark, for use on gasoline and lubricating oils, comprising a pictorial representation in full face of the head of a lion with wide-open mouth, together with the word "Gilmore" appearing immediately above, and the words "Monarch of All" below, the picture; No. 168,453, registered May 22, 1923, on an application filed December 21, 1922, of a composite trade-mark, for use on lubricating oils, consisting of a pictorial representation in full face of the head of a lion with wide-open mouth, together with the word "Eastoil" appearing immediately above the picture; No. 168,767, registered May 29, 1923, on an application filed December 23, 1922, of a composite trade-mark, for use on lubricating oils, comprising a similar representation of a lion's head, together with the word "Westoil" appearing immediately above the picture; No. 168,768, registered May 29, 1923, on an application filed December 23, 1922, of a composite trade-mark, for use on lubricating oils, comprising a similar representation of the head of a lion with the word "Gilco" appearing immediately above the picture; No. 209,057, registered February 16, 1926, on an application filed December 31, 1924, of a composite trade-mark, for use on kerosene, distillate, fuel oils, road oils, gasoline, greases for lubricating purposes, and lubricating oil, comprising a somewhat similar representation of a lion's head, together with the word "Gilmore" appearing above, and the words "Monarch of All" appearing beneath, the picture.

In its notice of opposition, appellee alleged ownership and registration of a composite trade-mark, for use on lubricating motor oils, comprising a pictorial representation in profile of the head of a wolf with wide-open mouth, together with the words "Wolf's Head," the word "Wolf's" being to the left, and the word "Head" to the right, of the picture; that its trade-mark was registered in the United States Patent Office on August 15, 1911, on an application filed April 20, 1911,

registration No. 83,117; that it and its predecessors have used said mark continuously since 1911 on its products; that it has been selling its products under its trade-mark throughout the United States; that, by reason of long and continuous use, its trade-mark has "come to be the designating mark for" its products; that the goods of the respective parties possessed the same descriptive properties; and that the mark sought to be registered by appellant so closely resembled the trade-mark of the opposer, appellee, as to be likely to cause confusion or mistake in the mind of the public and to deceive purchasers.

Appellant moved to dismiss the notice of opposition, alleging that the involved trade-marks did not sufficiently resemble one another as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers; that the marks were, in fact, "entirely dissimilar"; that opposer, appellee, was not entitled to the exclusive appropriation of the representation of the "heads of any and all animals" for use on lubricating motor oils; and that the notice of opposition did not state facts which, if established, would constitute grounds for refusing the registration of appellant's trade-mark.

Thereafter applicant, appellant, filed a formal waiver of its right to file an answer to the notice of opposition.

In his decision, the Examiner of Interferences held that, as appellant waived its right to file an answer, the material allegations contained in the notice of opposition would be deemed established, but that mere expressions of opinion or conclusions of fact or law, contained therein, would not be regarded as conclusive against appellant. The Examiner further held that, with the exception of the word "head," which appeared in both, the marks did not look alike, sound alike, nor possess the same meaning or significance, that the marks were not confusingly similar, and that therefore appellant was entitled to the registration of its composite trade-mark.

The Commissioner of Patents was of the opinion that the involved marks were confusingly similar, that the notice of opposition should be sustained, and that appellant was not entitled to register its mark. In his decision reversing the decision of the Examiner, the Commissioner, among other things, said:

"It is not disputed that the facts well pleaded in the notice of opposition must be considered true for the purposes of determining the issue here presented. The opposer therefore will be deemed to have widely used its mark throughout the United States upon its goods for more than twenty years and is presumably in possession of a valuable good will. Under these conditions if there is reasonable doubt it should be, following the usual practice, resolved against the newcomer.

"The goods, motor lubricating oil, upon which the respective marks are used is identical in character. Both marks include the combination of the representation of the head of a wild animal with its mouth open together with the name of the animal. There is considerable in common between the marks when viewed in their entirety. There are differences, it is true, but it is believed the similarity is such as to render confusion probable. There seems to have been no good reason why the applicant so long after the opposer had adopted and widely used its mark should have selected a mark possessing so many features similar to those of the opposer's mark. It is thought the findings in the Celotex Company Cases—Celotex Co. v. Millington [49 F.(2d) 1053], Celotex Co. v. Bronston Bros. & Co. [49 F.(2d) 1048], Celotex Co. v. Chicago Panelstone Company [49 F.(2d) 1051], —413 O. G. 279, 280, 284, 18 C. C. P. A. 1484, 1490, 1504, as well as in Northam Warren Corporation v. Universal Cosmetic Co., 18 F. (2d) 774 (C. C. A. 7th Cir.), are persuasive that the applicant should be denied registration."

It is contended by counsel for appellant that the involved marks are wholly dissimilar; that, although the question of confusing similarity of trade-marks "is largely, if not wholly, a matter of the opinion of the tribunal before whom the question is pending," nevertheless, such tribunal should not ignore prior adjudications pertinent to the issues involved; that the Commissioner of Patents has ignored such adjudications in the case at bar; that the adoption of appellant's trade-mark "was the result of a natural consequence, that is, to use words, namely 'Lion Head,' to graphically describe the long used design mark, namely the representation of a lion's head." Counsel for appellant further stated in their brief that "Certainly there was no attempt in the recent adoption of this new mark, 'Lion Head,' in association with a lion's head to describe the opposer's word mark or symbol of a wolf or wolf's head. Moreover, before even attempting to use the words 'Lion Head' as a word mark descriptive of the applicant's long used mark, a search was made of the records in the Patent Office, with the result that no anticipating reference was found," and contend that the cases cited and relied upon by the Commissioner of Patents have no

application to the involved issues; that the Commissioner ignored appellant's prior registrations, hereinbefore set forth, the dominant feature in each of which is the representation of a lion's head with wide-open mouth; that, due to the fact that its involved trade-mark is but a modification of its registered trade-marks, each of which it has used on its products, appellant is not a newcomer in the field, and therefore has the legal right to adopt, use, and register the mark here in question; that the lion is a member of the cat family, whereas, the wolf is "of the wild dog or dog-like species of mammal"; that a child can readily distinguish between the two animal heads; and that therefore there is no reasonable likelihood of confusion by the concurrent use of the involved marks.

Counsel for appellant have cited several cases which, it is claimed, support their contentions.

In view of the fact that appellant filed no answer to the notice of opposition, but was content to rest its case upon its application, the statements of fact contained in the notice of opposition, and its motion to dismiss the opposition, the statements contained in the brief of counsel for appellant, that a search was made of the records in the Patent Office in order to ascertain whether there were any anticipating references, and that none were found, are not supported by anything appearing of record.

It will be observed that appellee not only adopted and registered its trade-mark, but continuously and widely used it for approximately ten years before the adoption by appellant of its *registered trade-marks*, and that appellant used its registered trade-marks for approximately eight years prior to the adoption, October 22, 1930, of its involved trademark. Each of appellant's registered marks include, in addition to a representation of a lion's head, the following: In registration No. 164,372, the words "Gilmore" and "Monarch of All," in registration No. 168,453, the word "Eastoil," in registration No. 168,767, the word "Westoil," in registration No. 168,-768, the word "Gilco," and in registration No. 209,057, the words "Gilmore" and "Monarch of All." None of them contained the words "Lion Head."

In view of those facts, and in the absence of other evidence on the subject, we are unable to hold that the representation of a lion's head was the dominant feature of any of appellant's registered marks, or that appellant's products were known by the term "Lion Head." It is evident, we think, that they were not so known. Accordingly, we are of opinion that it was the purpose of appellant, by the adoption and use of its involved trademark, to market its products for the first time under the name "Lion Head," and that the statement contained in the brief of appellant, that the adoption and use of its involved trade-mark was the "result of a natural consequence, that is, to use words, namely 'Lion Head,' *to graphically describe the long used design mark, namely the representation of a lion's head*," is neither supported by, nor consistent with, the facts appearing of record. (Italics ours.)

It appears from the record that, due to the long and continued use of its trade-mark, appellee's oil is known and sold throughout the United States as "Wolf's Head Oil." That its trade-mark is a valuable one is not questioned. The *words* "Wolf's Head," are, in a sense, merely descriptive of the *representation* of a wolf's head; nevertheless, appellee's mark is purely arbitrary and fanciful as applied to its products. Moreover, there is nothing of record to indicate that appellee is not the originator of its wolf's head trademark for use on lubricating motor oils, nor that it is not the first to use an animal's head and words descriptive thereof as a purely arbitrary and fanciful trade-mark for use on such products.

It is true, of course, as argued by counsel for appellant, that the distinction between a lion's head and a wolf's head, when examined for the purpose of comparison, may readily be noted. This, however, is not the test to be applied in cases of this character. Purchasers of lubricating motor oils would not, as a rule, have the opportunity for "side-by-side comparison" of trade-marks, nor should they be required to make such comparison, in order to avoid confusion. Celanese Corporation of America v. Vanity Fair Silk Mills, 47 F.(2d) 373, 18 C. C. P. A. 958, and cases cited; The Celotex Co. v. Arthur Edward Millington, 49 F.(2d) 1053, 18 C. C. P. A. 1484.

We have repeatedly held that the general purpose of the law of trade-marks is to prevent one person from trading on the good will of another and to prevent confusion, mistake, and deceit.

The fundamental idea, we think, in the adoption and use by appellee of its mark, was to convey to the purchasing public that its oil could, and should, be identified by the *head* of an animal. It chose as its symbol the head of a wolf, and, in connection therewith, used the words "Wolf's Head." Substantial-

ly the same motive actuated appellant in the adoption of its involved trade-mark, although, so far as this record is concerned, it knew that appellee was a pioneer in that field. It chose the representation of the head of a lion and the words "Lion Head," in order that its oil might be sold, and become known, as "Lion Head Oil." Some purchasers desiring appellee's oil would, of course, remember the precise name "Wolf's Head." Many, however, due to the arbitrary and peculiarly fanciful character of the mark, would likely have in mind only that the oil they desired was known as an animal's head motor oil. Under such circumstances, the involved marks, although somewhat different in appearance and sound, would have the same meaning. If this is so, and we think it is, the registration and use by appellant of its mark would be likely to lead to confusion, and would cause many purchasers of lubricating motor oil to purchase the oil of appellant, when, as a matter of fact, they desired to purchase the goods of appellee. The converse of this is also true. The net result, therefore, of the registration and use by appellant of its mark, would be to confuse the purchasing public, the very thing the statute was intended to avoid. In addition, we think it appropriate to say that "There was not the slightest occasion, in making a selection of a trade-mark," for appellant "entering into the field of one whose business" was "well known and established." American Products Co. v. Henry F. Braithwaite, 53 F. 532, 533, 19 C. C. P. A. 736.

We have examined the cases cited by counsel for appellant and many others, but, in view of the fact that in this case, as in all cases of this character, the issues must be determined in accordance with the peculiar facts and circumstances of record, those decisions are not determinative of the issues here.

Considering the involved marks as a whole and other facts and circumstances of record, we are of opinion that the use by appellant of its trade-mark on its products concurrently with the use by appellee of its trade-mark on its products, would be likely to cause confusion in the mind of the public, and would result in appellant trading on the good will of appellee to the damage of both the public and appellee.

We conclude, therefore, that the Commissioner of Patents reached the right conclusion. The decision is affirmed.

Affirmed.

GARRETT, Associate Judge, dissents.