30 C.C.P.A.(Patents)
MONTGOMERY WARD & CO., Inc., v.
SPIEGEL, Inc.

Patent Appeal No. 4658.

Court of Customs and Patent Appeals.
Dec. 1, 1942.

F. P. Keiper, of Washington, D. C. (C. G. Stallings, of Chicago, Ill., and Earle D. Crammond, of Washington, D. C., of counsel), for appellant.

Benjamin B. Schneider, of Chicago, Ill. (Max Dressler and Albert R. Bell, both of Chicago, Ill., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

In the spring of 1939 appellee, Spiegel, Incorporated, hereafter referred to as Spiegel, made application for the registration of its trade-mark consisting of the words "Air Castle" superimposed upon or in front of a representation of a medieval castle, the words "Air Castle" appearing on a ribbon-like scroll, and in said application alleged use of its said mark upon radio tubes, dry cell batteries, storage batteries, and radios since February 1934.

Appellant, Montgomery Ward & Co., Incorporated, hereafter referred to as Ward, upon receiving notice of Spiegel's application, filed its notice of opposition to said registration, predicated upon its continuous use of the trade-mark "Airline" (beginning prior to and continuing through applicant's use of its mark) for goods of the same descriptive properties as those of applicant; to wit, radios, radio tubes, storage batteries, and dry cell batteries. Ward's mark consists of the term "Airline" disposed across a diagonal zig-zag line representing lightning flashes and combined with a base line. It was registered in that form in 1927. Ordinarily, the mark is used without employing the zig-zag line.

The opposition is based solely upon the "confusion in trade" clause of section 5 of the Trade-Mark Act of 1905, 15 U.S.C.A. § 85.

The Examiner of Interferences held that there was sufficient dissimilarity between the marks to justify the conclusion that there was no reasonable likelihood of confusion resulting from the concurrent use of the marks. He dismissed the opposition and adjudged that the applicant was entitled to the registration applied for. Upon appeal, the Commissioner of Patents adopted the same view as that of the Examiner of Interferences and affirmed his decision. From the decision of the Commissioner, Ward has here appealed.

That the goods of both parties are of the same descriptive properties, identical in character, and that Ward's use of its mark precedes Spiegel's use of its mark is not questioned. The sole issue presented is: Does there exist such similarity be-

tween the marks as to be likely to cause confusion in trade?

Much testimony was taken by both parties, but in view of the admitted facts, only a little of it needs consideration here in deciding the particular issue with which we are confronted. The testimony goes to the question of how the marks of both parties are used, the character of goods upon which they are used, the volume of business, the territory in which the goods are sold, and the kind of business conducted by both parties. Both parties are mail-order houses. Ward also sells its goods in many retail stores throughout the United States and in foreign countries. Spiegel confines its activities to mail-order credit business and does a large volume of business throughout the United States in small towns and rural territories.

Spiegel's testimony shows several instances where Spiegel was charged with having encroached upon trade-marks owned by Ward, and upon being promptly notified to desist from such use, did so without necessitating litigation. Presumably, this character of testimony was intended to reflect the idea that Spiegel adopted its instant trade-mark in absolute good faith. Spiegel admits, however, that in adopting the mark "Air Castle" it knew of the extensive use and popularity of Ward's mark "Airline," but it alleges that Ward voiced no objection to the use of the mark "Air Castle" for a period of approximately five years from 1934, when Spiegel first began using it, until 1939, when Spiegel applied for registration of the mark.

The instant controversy illustrates the difficulties that confront tradesmen when they adopt a mark, all or a part of which consists of a word or words which others may wish to use in describing their goods. It is argued by Spiegel that "air" is descriptive; that in speaking of radios and broadcasting, the word "air" is almost constantly used; and that "air line" is a term found in the dictionary (citing Webster's New International Dictionary, wherein "air line" is defined as "A straight line, as through the air; a bee line"). Spiegel further argues, in substance, that under such circumstances no one dealing in goods similar to those of the parties here involved has the right to monopolize the word "air," which is so closely identified with the merchandise sold. Spiegel urges that in choosing the mark "Air Castle" it has succeeded in getting as far away from Ward's mark as is possible without abandoning the word "air." This, it contends, is true because the common meaning of the term "air castle" has no relation to the air traversed by radio waves, "air castle" being defined in the dictionary as a "daydream." Spiegel states that in adopting said mark it intended that the term "Air Castle," with the picture of the castle behind, should convey to the radio-buying public the excellence of its products and to conjure up a "sort of a dreamy idea" that one "could get enthused over"—such as the idea that "a man's home is his castle."

To the foregoing argument of Spiegel, Ward replies that in the two marks the letters A, I, and R are the dominant portion; that the last letter of the words "line" and "castle" is E; and that under certain decisions of this court where the dominant portion of marks somewhat similar to those involved here were adopted by newcomers it has been held, and properly so, that the likelihood of confusion would exist. Ward points out that in Spiegel's catalogues, Spiegel's merchandise is described as "Air Castle" products, quite often without reference to any picture of a castle or any emphasis on the word "castle." Ward states that it has successfully brought about discontinuance of the use of several marks upon the kind of goods with which we are here concerned, such marks being "Air Master," "Airguide," etc.

Spiegel argues that the word "castle" and the picture of the castle form the dominant portion of its mark; that the word "air" could not be the dominant portion of both marks for the reason that it "does not indicate to purchasers the origin of goods." It cites this court's decision in Langendorf United Bakeries, Inc. v. General Foods Corporation, 125 F.2d 159, 29 C.C.P.A., Patents, 831. See also American Brewing Co., Inc. v. Delatour Beverage Corporation, 100 F.2d 253, 26 C.C.P.A., Patents, 778.

No case in all that have been cited to us is exactly on all fours with the instant one, and we have not discovered any such case ourselves. As we view the present situation, however, it seems to us that the decision must turn partly upon the difference in appearance and sound between the two marks, but more especially upon the difference in meaning which must be attributed to them.

■ We have hereinbefore set out the definitions of "air line" and "air castle."

"Air castle" seems to us to be an arbitrary selection which is suggestive of what might be brought about by the use of the "Air Castle" radio. This connotation is wholly different from any suggestion or meaning that might be attributed to the term "air line." Therefore, unless Ward is to be given a monopoly upon the word "air" it would seem that Spiegel, although having knowledge of the "Airline" trade-mark at the time of adopting its mark, has avoided the reasonable possibility of confusion in trade by choosing the term "air castle," which imports such a radically different meaning from that of "air line." Thus, it does not seem likely that anyone, being familiar with the well-known and favorably considered "Airline" products and desiring to purchase "Airline" merchandise, would be confused by the name "Air Castle" and mistakenly accept "Air Castle" goods.

 By the foregoing holding that there is no confusing similarity between the "Airline" and "Air Castle" marks, we do not mean to imply that any newcomer would be privileged to register a trade-mark using the word "air," unless the mark as a whole were of such character as to eliminate the probability of confusion in trade. In the Langendorf case, supra, where the trade-marks "Wheato-Nuts" and "Grape-Nuts" were involved, this court said [125 F.2d 161]: " * * * but to avoid conflict with appellee's mark the word 'nuts' must be used in such association as will clearly avoid confusion in the mind of the purchasing public as to the origin of the goods. Appellant's mark, in our opinion, does not accomplish this."

Ward has cited the decision of the Commissioner of Patents in B. F. Goodrich Co. v. Firestone Tire & Rubber Co., 2 U.S.P.Q. 316. That case involved the marks "Airline," on the one hand, and "Airway," on the other, for automobile tires. It was there held that the terms were deceptively similar.

It will not be necessary for us to discuss all the cases cited, since in this case we are in very much the same position as we were in the Langendorf case, supra, where we said: "Each of the parties in its brief has cited a large number of cases in support of its respective contention. Many of such decisions are of very little value because they depend upon the facts of the particular cases."

The Goodrich Company case, supra, is illustrative of the decisions relied upon by Ward. The marks "Airline" and "Airway" used in connection with automobile tires were not only similar in appearance but somewhat similar in sound and quite similar in meaning. In the instant case there is dissimilarity in appearance, sound, and meaning. The situation here is easily distinguishable from the situations prevailing in the instances referred to by Ward in connection with the marks "Airway," "Air Master," and "Airguide."

In view of the foregoing considerations, we think the Commissioner of Patents was right when he said: "I cannot agree with appellant's contention, but instead agree with the examiner in considering the marks, when weighed in their entireties, so different in appearance, sound and ordinary meaning that no confusion between the marks or deception of purchasers would be likely as a result of their concurrent use on radio receiving sets or the other identical goods with which they are used by the parties."

Accordingly, the commissioner's decision is affirmed.

Affirmed.