**FIRESTONE TIRE & RUBBER CO. v. MONTGOMERY WARD & CO., Inc.**

Patent Appeals No. 4972.

Court of Customs and Patent Appeals.
May 24, 1945.

Rehearing Denied July 2, 1945.

440

Ely & Frye, of Akron, Ohio (Albert L. Ely and Bernard C. Frye, both of Akron, Ohio, and Charles M. Thomas, of Washington, D. C., of counsel), for appellant.

F. P. Keiper, of Chicago, Ill. (Earle D. Crammond, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

From a decision of the Commissioner of Patents, 59 U.S.P.Q. 27, speaking through the First Assistant Commissioner, affirming that of the Examiner of Interferences, which sustained appellee's notice of opposition to the registration of appellant's trade-mark and adjudged that the applicant (appellant) was not entitled to the registration applied for, appellant has here appealed.

The goods of appellant (hereinafter referred to as Firestone) and those of appellee (hereinafter referred to as Montgomery Ward) upon which their respective marks are used are, in each instance, radios and radio supplies. The mark which Firestone seeks to register is a composite mark comprising the words "Air Chief". Interposed between these two words is an illustration consisting of a winged figure designed with heroic impressiveness, standing on a globe. Above the head of the symbolic figure and parallel to its outstretched arms and wings is the word "Firestone". To the left of the word "Air" are two stars.

Montgomery Ward's registered mark, upon which it bases its opposition, consists of the word "Airline" beginning with a capital "A", a portion of which extends in the form of a line under the other letters of the word. Across the word is a zig-zag symbol indicative of a flash of lightning.

The record shows that Montgomery Ward's use of its mark on its goods in interstate commerce long antedated the use of the "Air Chief" mark of Firestone; that since the adoption of its mark in 1922, Montgomery Ward has distributed many millions of catalogues and has spent many millions of dollars in advertising its "Airline" radio goods; that its mark is registered in many foreign countries; and that it has an extensive business in foreign markets for its "Airline" goods.

The record also shows that Firestone does a large business and that it is selling and advertising its "Air Chief" radio goods in the same market, at least in part, as that of Montgomery Ward.

In order that the precise issues presented may be fully understood, it is deemed advisable to reproduce here the two marks as they appear in the record.

FIRESTONE'S MARK

MONTGOMERY WARD'S MARK

The tribunals below concurred in holding that the marks in their entirety sufficiently resemble each other that confusion might be expected to result from their concurrent use on identical goods. Upon this basis the opposition was sustained and the registration denied.

█ We are in disagreement with the holding of the tribunals below. While it is a rule too well settled to require citation of authority that in determining the likelihood of confusion between similar marks, used upon similar or identical goods,

it is necessary to consider the marks in their entirety, it is equally well established that in determining this question it is proper to analyze the different features of the marks and consider their appearance, sound, and meaning.

It is obvious that the word "Air" in both marks might be regarded as having some suggestion relating to radio waves which pass through the air, and to that extent the marks are identical. Otherwise, however, they are almost wholly different. The word "Air" is said by Firestone to be descriptive, and Montgomery Ward contends that it is the dominant portion of the marks. Montgomery Ward states that while the prefix "air" in the two marks may suggest radios, it likewise suggests aviation; and that the suffixes of the marks suggest related activities, such as "Airlines and officials thereof", and therefore do not dispel the likelihood of confusion when the marks are concurrently used upon radios and radio equipment.

Firestone urges as a consideration of importance in the decision of the instant issue that the goods of the respective parties—radios and radio supplies—are of that class of merchandise "which is purchased only after careful observation after trial as to tone and selectivity, and in many instances after comparison with competitive radios". It is our view that this matter, while a consideration which often has persuasive influence, can have little if any bearing upon the decision of the present issue. It is not only well known that the so-called indiscriminate public purchases cheap radios and numerous inexpensive parts and supplies, but also recognized that such purchases ordinarily neither require nor receive any extended or serious investigation. It is true that no doubt some of the goods sold by the parties under their respective marks are purchased by discriminating purchasers, and in such instances there is never as much likelihood of confusion because the discriminating purchaser would ordinarily know what make of radio he wanted and other facts and circumstances concerning it, in which the casual purchaser would not be interested. However, it must be remembered that the goods of the parties are sold to the general public, which is comprised not only of critical buyers but also of those who buy without stopping to analyze. See Schering & Glatz, Inc., v. Sharp & Dohme, Inc., 146 F.2d 1019, 32 C.C.P.A.,Patents, ——.

While it has been often said that rarely, if ever, are identical facts presented in different trade-mark registration cases, and while the rule of stare decisis is seldom applied in the decision of such cases, we think the facts in this case are so similar to the facts involved in Montgomery Ward & Co., Inc., v. Spiegel, Inc., 132 F.2d 144, 30 C.C.P.A.,Patents, 721, that that case should be regarded as practically controlling of decision of the issue here presented. In that case Spiegel, Inc., applied for the registration of the words "Air Castle" superimposed on a representation of a medieval castle, the words appearing on a ribbon-like scroll. The opposer there, Montgomery Ward & Company, opposed upon the basis of its registered mark "Airline", which is the same registration that forms the basis of its opposition in the instant case. This court there held that the term "Airline", according to Webster's New International Dictionary (1932) meant "A straight line, as through the air; a bee line", and that the term "Air Castle", according to Spiegel's contentions, which we did not disapprove, suggested a "sort of a dreamy idea" that one could "get enthused over", such as the idea that "a man's home is his castle". We held, in substance, that "Air Castle" was different in meaning, sound, and appearance from the word "Airline" and that unless Montgomery Ward was to be given a monopoly of the use of the word "Air", it was proper to permit registration of the "Air Castle" mark since there was no likelihood of confusion.

If we were correct in our holding in that case, we are certain that the commissioner fell into error in holding in the instant case that there was a likelihood of confusion from the concurrent use of the marks "Air Chief" and "Airline".

In the 1939 edition of Webster's New International Dictionary, an additional definition has been given for the word "Airline" over and above that shown in the 1932 edition. It is as follows: "* * * A. A system of transportation by aircraft, or the equipment with which the system operates. B. The company or business organization owning or operating such a system. C. The route covered."

It was largely this latter state of facts that prompted Montgomery Ward to argue that there is likelihood of confusion, and that was largely the basis of the holding of the tribunals below. It is shown in the

record that in its transactions relating to its Airline radios, Montgomery Ward frequently resorts to the use of airline transportation; and it is argued that by reason of this fact there is a probability of confusion.

The term "Air Chief" has no suggestion of a bee line, and certainly if it suggests anything relative to a radio it would be very indefinite and might suggest many other things. The outstretched wings of the heroic figure standing on the globe, said to represent Mercury, would at most only remotely, if at all, suggest matters relating to radios; whereas the term "Airline" suggests a straight line in the air— more precisely it points toward the transmission of radio waves through the air.

Viewing the marks as a whole and considering the word "Air", in both marks, we must conclude, as we did in the Spiegel case, supra, where the terms "Air Castle" and "Airline" were involved, that there would be no likelihood of confusion resulting from the concurrent use of the marks on radios and radio equipment. The sound, appearance, and meaning of the words "Chief" and "line" are wholly different— so different as to lead one away from any thought springing from the commonly used word "Air". The portions of Firestone's mark other than the dominant portion, "Air Chief" and those of Montgomery Ward's mark other than "Airline" are so wholly different in their appearance, suggestions, and meaning as to prompt the conclusion that when the marks as a whole are considered, there would be no likelihood of confusion.

■ It is true that over the radio and in advertising literature, the goods of the respective parties will be referred to as "Air Chief" and "Airline" radios, and many prospective customers would be unaware of certain features of the respective marks. It is our view, however, that notwithstanding this fact, the terms "Air Chief" and "Airline", considered alone, being the dominant portions of the two marks, are so vastly different in meaning, appearance, and sound as to insure against the probability of confusion.

It is proper to say here that it is not seen how Firestone could have used the term "Air" at all in a trade-mark more effectively to avoid the probability of confusion than by the use of the term "Chief" and the other portions of its composite mark. It is our view, therefore, that the

commissioner arrived at the wrong conclusion. He should have dismissed the opposition and directed that the mark be registered. His decision is accordingly reversed.

Reversed.

O'CONNELL, Associate Judge (dissenting).

If appearance were the only factor to be taken into consideration in comparing the marks of competing vendors, then one glance at the graphic illustration reproduced in the prevailing opinion would be sufficient to settle this case. However, it is true, as stated in the opinion of the Examiner of Trade-Mark Interferences, "Of the several factors of appearance, sound and meaning which must be taken into account in comparing the marks, it is believed that here, as is frequently the case, appearance is of the least relative importance. Purchasers more often than not remember and call for a desired brand of goods under a convenient unitary literal symbol present in the mark under which they are sold and without regard to pictorial or other merely subordinate matter with which it may be associated upon the goods or labels therefor. Two such symbols are present in the mark used by the applicant, namely, the separately displayed words 'Firestone' and 'Air Chief'. Each of these is without more capable of identifying the goods as to source, and it is believed that whereas purchasers thereof would sometimes order applicant's products under the word 'Firestone' alone, they in many instances would similarly rely wholly upon 'Air Chief' for this purpose. If that is so, then the presence of 'Firestone', the distinguishing feature of the applicant's corporate name, as a separable feature of its composite mark would not justify any different conclusion upon the statutory question under consideration than if such feature were omitted from the mark". Citing, Menendez v. Holt, 128 U.S. 514, 9 S. Ct. 143, 32 L.Ed. 526.

Moreover, the record discloses that the wording "Firestone Air Chief" is sometimes used by Firestone on its goods without out the graphic symbol, and that the term "Air Chief" has been used also by it without either the word "Firestone" or the graphic symbol. Another factor to be considered in respect to appearance is that the merchandise of the parties, both engaged in the mail order business, is sold through

the medium of a catalogue. Under such circumstances, customers may not be afforded an opportunity of comparing either the involved marks or the merchandise.

Firestone's mark in its reproduction in the prevailing opinion includes the words "Air Chief," produced in a block style of type, with the initial letter "A" outlined in the form of an inverted capital "U". The two words are separated by the ankles of the winged figure, poised and equipped for flight, at, or near, the top of the globe. This globe, it may be noted, bears a suggestive outline of the geography of North and South America, the Gulf of Mexico, the Isthmus of Panama, and other parts of the world.

Above the head of the winged figure, and parallel to its outstretched arms and wings, the name "Firestone" is horizontally printed in bold face type, with a capital "F." Two five point stars are placed opposite the word "Air." As produced, the word "Firestone" might be easily overlooked by the casual observer; not only because of the comparative dimensions of the word, but also because of the dominant and attractive features with which the symbolic figure has been endowed.

Montgomery Ward's trade-mark, "Airline" is produced as one word, with a capital "A" and underscored lower case letters. A zigzag arrow is impressed diagonally therethrough, suggestive of a flash of lightning. From the evidence, it appears that the mark more often comprises the use of a block style of type, and frequently the letter "A" is employed in the outline of an inverted capital "U". Thus, it will be noted, that the words, "Airline" and "Air Chief," the unitary literal symbols of the competing marks comprise but two syllables; one being seven letters in length, the other eight. The visual appearance of the first syllable of each is identical, and, when produced in a block style of type, the second syllable of each has an unusual degree of visual similarity.

Relative to sound, in pronunciation Firestone's two words "Air" and "Chief" are neither segregated nor separately spoken. They are spoken as a single word, with the accent on the word "Air," the same as in Montgomery Ward's word "Airline." Under the law, similarity of sound is of itself sufficient to constitute confusing similarity when the marks are applied, as here, to merchandise of the same descriptive properties.

The evidence discloses that Montgomery Ward advertises its goods through the medium of radio broadcasting, which involves the exercise only of sound and hearing. It is common experience, in listening to the radio, to hear an announcer urge the radio audience to purchase a sponsor's goods, and to use the respective methods of communication in placing the order, *including the use of the telephone.* Under such conditions, appearance of the marks does not even enter into the transaction; while on the other hand, the spoken word, the sound of the mark, is the only criterion employed in effecting a sale and delivery of the merchandise.

In analyzing the meaning of the marks, it will be found that this Court passed upon the features of Montgomery Ward's mark in the case of Montgomery Ward & Co. v. Spiegel, 132 F.2d 144, 145, 30 C.C. P.A.,Patents, 721. In that case, the word "Airline" was held to be descriptive of "A straight line, as through the air; a bee line." That definition still resides in the dictionary and is still in use to describe the shortest distance between two points, such as, "The drive carried the American lines 44 airline miles into Luzon."

However, new entries are continually being made in the dictionary to record words that have been coined or applied with new meaning by the public to meet the needs of contemporary developments. This is true particularly in the field of air and radio, as will be noted by a comparison of current and prior editions of various dictionaries. Therefore, as pointed out in the opinion of the Commissioner of Patents in the instant case, the popular primary use and meaning of the word "Airline," at this time, is such as is defined in Webster's New International Dictionary, Second Edition, 1939: "Air Line. 3. Aeronautics. A. A system of transportation by aircraft, or the equipment with which the system operates. B. The company or business organization owning or operating such a system. C. The route covered."

In applying the foregoing definition to the involved issues and in discussing the decision of this Court in Montgomery Ward & Co v. Spiegel, supra, the Commissioner of Patents correctly stated:

"Only one definition of 'air line' appears in the opinion, namely, 'a straight line, as through the air; a beeline.' This definition was quoted from Webster's New

International Dictionary, which also defines the term as 'a system of transportation by aircraft, or the equipment with which the system operates.'

"While its association with the particular merchandise involved would doubtless suggest other meanings of opposer's mark, I am clearly of the opinion that this latter definition is the one that would immediately occur to the minds of most Americans upon seeing or hearing the words 'air line.' The reason is that recent world events in which air transportation has played so important and so dramatic a part have made the public alertly conscious of current developments and accomplishments in connection with aircraft, and its increasingly improved adaptability to the requirements of global warfare.

"And by the same token, I think the words 'Air Chief' are likely to bear a very similar connotation. In the same issue of a local newspaper, for example, I find references to the 'Chief' of the United States Army Air Forces, the 'Chief' of the Imperial Air Force and the 'Chief' of the Mediterranean Air Command. Scarcely a day passes that does not bring stories concerning the exploits of these officers, and others similarly engaged; and presumably such stories are read by everyone who is interested in the thrilling progress of our war in the air. To a substantial majority of these readers it seems to me that the words 'Air Chief' would inevitably suggest some such individual, or at least would connote supremacy in relation to the operation of aircraft."

Moreover, the term "chief," like the terms "blue ribbon," "gold medal," "master," and "guide," may be considered also as merely self-laudatory and descriptive of the Firestone merchandise; and if the term "Chief" as used here is not suggestive of communication by air, then it belongs to that class of weak words to which the courts attribute but little trade-mark significance.

The definition of the word "Airline" adopted by this Court describes not a device, but a process of computing the distance between two points by means of an imaginary concept, such as a bee line. Because of the widespread current usage of the word "Airline," however, the average person of today would be very apt to think of aircraft, instead of a bee, in visualizing the airline distance between two points.

It is difficult to understand how this Court holds that the case of Montgomery Ward & Co. v. Spiegel, supra, is controlling in the instant case. By its action in so doing, however, the Court in effect finds that the word "Air" is descriptive of radio and radio supplies, and the word "Airline" is not descriptive of matters relating to transportation by air, but is descriptive of the shortest distance between two points, as a straight line; a bee line.

The word radio as defined in Websters New International Dictionary, 1939, reads as follows and makes no reference to the word air: "radio a. The transmission and reception of signals by means of electric waves without a connecting wire; the use of radiotelegraphy or radiotelephony for conveying messages."

Really what the Court has done in the instant case is to dissect the marks, the word "air" being held to be descriptive, and therefore not entitled to the monopoly that registration implies; and "The sound, appearance, and meaning of the words 'Chief' and 'line' are [held to be] wholly different—so different as to lead one away from any thought springing from the commonly used word 'air'."

An examination of the record in this case makes it impossible for me to escape the conclusion that Firestone, in the adoption of its mark, intended to give it no meaning other than the suggestion of communication and transportation by air; the same suggestion as is conveyed by Montgomery Ward's mark "Airline." That intent is disclosed by Firestone's use of the words "Air Chief," and by its act in superimposing an "Air Chief," poised and equipped for flight, from the top of the world.

Furthermore, the "Air Chief" employed in Firestone's mark with two five-point stars, is suggestive of planets, such as Mercury; and Firestone's winged figure is practically identical in design to the well-known design of the ancient god of commerce described in Webster's Handbook Collegiate Dictionary, 1944, as "Mercury 2. A carrier of tidings; a messenger; a guide."

Facts pertinent to the issues involved in this case have been agreed to by stipulation between the parties, and establish that the trade-mark "Airline" is now the property of the appellee and that the mark is, in all respects, valid and subsisting;

*that since its adoption in 1922,* appellee has produced and distributed to date at least 245,997,888 general catalogues, at a cost of more than $177,000,000, in which products in the class here involved were advertised under the name "Airline" and that the cost of advertising in its general catalogues alone of items in the class covered by appellant's attempted registration sold by Montgomery Ward under the trade-mark "Airline" has been more than $2,000,000, in addition to advertising in its retail stores, *advertising by radio* and advertising by special catalogues and "flyers;" that appellee has sold, from the year 1926 to date, more than 3,000,000 radio receiving sets through its combined retail and mail order establishments, exclusive of other radio and sound equipment sold under the trade-mark "Airline;" that the aggregate value of the sales, of radio and items similarly classified under the trade-mark "Airline" from the Fall & Winter 1926-1927 catalogue to date, is more than $17,600,000; that the trade-mark "Airline" is registered not only in the United States, but also in Argentina, Belgium, Brazil, Chile, Cuba, Finland, France, Mexico, New Zealand, Palestine, Portugal, Spain, Turkey, Union of South Africa, Uruguay, Greece, Syria, and Lebanon. (Italics mine.)

In Kroger Grocery & Baking Co. v. Blue Earth Canning Co., 88 F.2d *725, 726,* 24 C.C.P.A.,Patents, 1098, this Court said: "We have little sympathy with those who adopt marks having a close resemblance to the trade-marks of others, with which they are familiar, used upon goods of the same descriptive properties, even *though they be of the opinion that they are not confusingly similar.* One who adopts a valid mark and establishes a large business in which the mark is used should have all doubts resolved in his favor as against newcomers in an opposition proceeding."

In my opinion, the words "Airline" and "Air Chief" as employed in the respective marks, considered in their entirety, so nearly resemble each other in sound, appearance, and meaning as to be likely to cause confusion and mistake in the mind of the public when used concurrently by the two parties upon identical goods; and that Montgomery Ward will not only be damaged as a result of the registration of the Firestone mark, but also that Firestone will be thereby unjustly and handsomely enriched at the expense of its competitor.

For the reasons stated, the decision of the Commissioner of Patents should be affirmed.