39 C.C.P.A.(Patents)
### NORTH STAR MFG. CO. v. WELLS LAMONT CORP.

Patent Appeals No. 5813.

United States Court of Customs and Patent Appeals.

Dec. 18, 1951.

O'Connell, Judge, dissented.

Harvey B. Jacobson, Washington, D. C. (John H. Lewis, Jr., Washington, D. C., of counsel), for appellant.

Parry & Miller, Washington, D. C. (Edmund H. Parry, Jr., Washington, D. C., of counsel), for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents, 84 USPQ 486, affirming the decision of the Examiner of Interferences sustaining appellee's notice of opposition to appellant's application for registration of the notation "White Ox" as a trade-mark for use on work gloves, and holding that appellant was not entitled to register the mark under section 5 of the Trade-Mark Act of February 20, 1905, 33 Stat. 725, 15 U.S.C. 85, now 15 U.S.C.A. § 1052.[1]

In its application for registration, appellant alleged that it has continuously used its mark on its goods since 1930.

In its notice of opposition, dated February 19, 1948, appellee alleges ownership and registration of a composite trade-mark, for use on work gloves, comprising a pictorial representation in profile of the head of a mule, together with the words "White Mule" and "It's Tough," the words "White Mule" being under the mule head and the words "It's Tough" being under the words "White Mule;" that the words "It's Tough" have been disclaimed; that it has for many years, and is now, engaged in the production and distribution of work gloves; that long before the adoption by appellant of the trade-mark herein opposed and appellant's first use of said trade-mark, appellee adopted its trade-mark for work gloves and continuously since its adoption appellee has used and is now using its trade-mark on work gloves in intrastate and interstate commerce throughout the United States; that it is the present owner of its said trade-mark and Reg. No. 251,327 granted it under its former name, Wells-Lamont Manufacturing Co., on January 1, 1929; that its trade-mark has never been abandoned and that said registration is still outstanding and uncancelled; that its

gloves have been extensively sold and its trade-mark has long been familiar to the purchasing public as associated with opposer's business and indicating gloves originating with opposer; that the goods of the respective parties are not only of the same descriptive properties but are identical goods and that both are sold through the same outlets and to the same class of customers; that the mark sought to be registered by appellant so closely resembles the trade-mark of opposer as to be reasonably likely to cause the purchasing public to confuse the source of origin of the goods; and, that the grant of registration to appellant of its aforementioned trade-mark is likely to cause great damage and injury to appellee.

In its answer, dated June 11, 1948, appellant admitted the issuance to appellee of United States Trade-Mark Registration No. 251,327, but denied that appellee has been legally injured or that the public is likely to be confused by the concurrent use of the involved marks. Appellant denied all other allegations of appellee's notice of opposition and "leaves the opposer to its proof thereof."

Neither party took testimony but it was stipulated by counsel for the respective parties that appellee has been in the business of manufacturing and selling work gloves from at least as early as 1919 continuously down to the present time; that appellee has continuously sold work gloves under its trade-mark since the latter part of 1927 continuously down to the present time; that such sales have been to the purchasing public, through retail stores through which work gloves are commonly sold, in large volume and nationally throughout the United States; that Trade-Mark Reg. 251,327 was granted to appellee January 21, 1929 under its former name Wells-Lamont Manufacturing Co. and is still outstanding and uncancelled; and, that a copy of appellee's trade-mark will be in evidence, as well as Exhibit 1, being one of appellee's work gloves and Exhibit 2, being one of appel-

1. Sec. 6, Trade-Mark Act of 1905, 33 Stat. 726, 15 U.S.C. 86, now 15 U.S.C.A. §§ 1061, 1062, provides: " * * * Any person who believes he would be damaged by the registration of a mark may op- pose the same by filing notice of opposition, stating the grounds therefor, in the Patent Office within thirty days after the publication of the mark sought to be registered. * * *."

lee's cartons in which its work gloves are sold.

Appellant has disclaimed the word "White" apart from its mark as shown.

Both appellant and appellee stated in their briefs before this court that the only issue here is whether or not the trade-marks "White Ox" and "White Mule" are confusingly similar as applied to work gloves. The stipulation of facts by the parties similarly confines the case to this particular issue. Thus it will be seen that the only issue here presented is whether or not the involved trade-marks so resemble one another as to be reasonably likely to cause confusion or mistake, or to deceive customers, when applied to the same goods.

The examiner held the involved marks to be confusingly similar and in his decision stated: "These marks, considered in their entireties, are deemed to be quite similar in general significance, in that both suggest domesticated working animals noted for strength and durability; and this similarity in the general impressions conveyed thereby is considerably enhanced by the use as prefixes of the identical color designation 'White'. In their essentials, it is believed that such notations are closely comparable to the marks 'Lion Head' and 'Wolf's Head' involved in the case of Gilmore Refining [Oil] Co. v. Wolverine Empire Refining Co. (445 O.G. 775, 69 F.2d 532 [21 C.C.P.A., Patents, 943.]) * * *"

The commissioner agreed with the reasoning of the examiner and affirmed the examiner's decision.

In the case of Gilmore Oil Co., Ltd., v. Wolverine-Empire Refining Co., 69 F.2d 532, 21 C.C.P.A., Patents, 943, cited by the examiner, the involved marks were both composite marks. One was comprised of a pictorial representation in full face of the head of a lion with wide-open mouth, together with the words "Lion Head" which appeared to the immediate right of the lion's head. The other mark comprised a pictorial representation in profile of the head of a wolf with wide-open mouth, together with the words "Wolf's Head," the word "Wolf's" being to the left, and the word "Head" to the right of the wolf's head.

It will be noted that both marks involved were composite marks comprising a pictorial representation plus words, and each having a pictorial representation of the head of a wild animal with wide-open mouth. A careful reading of the opinion in that case, in which one judge dissented, leads us to believe that the majority of the court placed great weight on the over-all similarity of the arbitrary and fanciful pictorial representation of the animal head used by each party, and that it regarded this to be the dominant feature of each of these marks, especially when the word "Head" was used with it in the manner discussed above. This is shown by the following statement of the court: "The fundamental idea, we think, in the adoption and use by appellee of its mark, was to convey to the purchasing public that its oil could, and should, be identified by the *head* of an animal. [Italics the court's.] It chose as its symbol the head of a wolf, and, in connection therewith, used the words 'Wolf's Head.' Substantially the same motive actuated appellant in the adoption of its involved trade-mark, * * *. It chose the representation of the head of a lion and the words 'Lion Head,' in order that its oil might be sold, and become known, as 'Lion Head Oil.' Some purchasers desiring appellee's oil would, of course, remember the precise name 'Wolf's Head.' Many, however, *due to the arbitrary and peculiarly fanciful character of the mark,* would likely have in mind only that the oil they desired was known as an animal's head motor oil. [Italics ours.] Under such circumstances, * * * the registration and use by appellant of its mark would be likely to lead to confusion, * * *." The trade-marks in issue here, however, are simply composed of a plurality of words. In view of this, we consider the Gilmore case distinguishable from the case at bar.

■ We have repeatedly held that prior decisions are of little value in an opposition proceeding because each case must rest upon its own distinctive facts. Likelihood of confusion from similar marks is largely a matter of opinion. Crown Overall Manufacturing Company v. Desmond's, 182 F.2d 645, 37 C.C.P.A., Patents, 1118; George

Ziegler Company v. Tom Huston Peanut Company, 181 F.2d 237, 37 C.C.P.A., Patents, 947. In the case of Gilmore Oil Co., Ltd. v. Wolverine-Empire Refining Co., supra [69 F.2d 535, 21 C.C.P.A., Patents, 943] in discussing the inapplicability of prior decisions cited by the appellant, the court said: "* * * in view of the fact that in this case, as in all cases of this character, the issues must be determined in accordance with the peculiar facts and circumstances of record, those decisions are not determinative of the issues here."

The likelihood of confusion in the minds of the purchasing public as to origin of the goods it purchases because of the similarity of marks is the test applied by this court in opposition proceedings. Nestle's Milk Products, Inc., v. Baker Importing Company, Inc., 182 F.2d 193, 37 C.C.P.A., Patents, 1066; Standard Laboratories, Inc., v. Procter & Gamble Co., 167 F.2d 1022, 35 C.C.P.A., Patents, 1146.

The marks must be considered in their entireties, Apollo Shirt Co. v. Enro Shirt Co., Inc., 165 F.2d 469, 35 C.C.P.A., Patents, 849; Miles Laboratories, Inc., v. Foley & Co., 144 F.2d 888, 32 C.C.P.A., Patents, 714.

The court in considering contested trademarks in their entireties may take notice of descriptive as well as disclaimed portions despite the rule that the validity of registered marks which are merely descriptive is not to be challenged in opposition proceedings. West Disinfecting Co. v. Lan-O-Sheen Co., 163 F.2d 566, 35 C.C.P.A., Patents, 706. A descriptive word, having little trade-mark significance, will not be regarded as the dominant part of a mark. Atlantic Seafood Packers v. Florida Fruit Canners, Inc., 166 F.2d 586, 35 C.C.P.A., Patents, 985.

We consider the words "Mule" and "Ox" to be the dominant part of the involved marks. The words "Mule" and "Ox" are not similar; they do not look alike or sound alike, and, considering the marks in their entireties, we do not consider them to be confusingly similar and do not think their concurrent use would be likely to cause confusion in trade.

The decision appealed from is reversed.

Reversed.

O'CONNELL, Judge, dissents.