48 CCPA

**BRISTOL-MYERS COMPANY,**
Appellant,

v.

**PHARMACO, INC., Appellee.**
Patent Appeal No. 6696.

United States Court of Customs
and Patent Appeals.
July 21, 1961.

Helge C. Dieserud, Fish, Richardson & Neave, New York City, for appellant.

Hervey, Barber & McKee, Morrison T. Hankins, H. John Campaign, New York City, for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

WORLEY, Chief Judge.

Appellee seeks registration of "Buffagum" as a trademark for "Chewing Gum Containing Analgesics and Antacids" alleging first use on February 26, 1957. Registration is opposed by appellant on the basis of prior use and registration of "Bufferin" for "Antacid Aspirin."

Opposer is concededly the prior user. As described in the application and registration, the goods have the same antacid and analgesic characteristics and are likely to be sold to the same class of purchasers for therapeutic purposes. We are, of course, primarily concerned with the coverage of the competing application and registration rather than with specimen labels which might or might not subsequently vary. General Shoe Corp. v. Lerner Bros. Mfg. Co., Inc., 254 F.2d 154, 45 CCPA 872.

The sole issue is whether concurrent use of the respective marks would be likely to result in confusion, mistake, or deception within the meaning of Section 2(d) of the Lanham Act.[2]

---

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d) Title 28 United States Code.

2. Sec. 2. Trademarks registrable on the principal register

"No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be re-fused registration on the principal register on account of its nature unless it—

\* \* \* \* \*

"(d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers: \* \*"
15 U.S.C.A. § 1052(d).

In dismissing the opposition the Trademark Trial and Appeal board stated that:

" 'Buffer' is a word in use in the pharmaceutical trade and is descriptive of the antacid characteristics of the products of opposer and applicant. The similarities which exist between the marks of the parties are due to the inclusion of that word in opposer's mark and the use of substantially the phonetic equivalent thereof, viz., 'Buffa' in applicant's mark. The marks otherwise differ substantially.

"Considering the nature of the term 'Buffer' as applied to the goods of the parties and the differences between the marks, it is concluded that there is no reasonable likelihood of confusion or mistake or deception of purchasers."

We accept without question the board's statement that " 'Buffer' is a word in use in the pharmaceutical trade and is descriptive of the antacid characteristics of the products of opposer and applicant." Doubtless those in the "pharmaceutical trade" would attach the technical meaning to "Buffer," but we have grave doubts that the average purchaser in what is presumably a mass market would be aware of the technical meaning of that term. Absent such an interpretation, we think it more likely than not that the average purchaser would attach more trademark significance to "Buffer" and "Buffa" than the board seems to have contemplated.

It seems to us that the goods and marks have substantially more, rather than less, in common. As the board points out, both products have the same antacid characteristics. In addition, they are inexpensive, non-prescription items sold over the same counters to mass purchasers. The marks contain the same number of letters as well as syllables with the first syllable, "Buff" identical

to both marks. Although "gum" has no similarity with anything in "Bufferin," still it is wholly descriptive of the goods to which it is applied, thus has no trademark significance.

While we appreciate the reasoning of the board, we are unable to agree that concurrent use of "Bufferin" and "Buffagum" on the respective goods would not be likely to result in confusion within the meaning of Section 2(d). We think the opposition should have been sustained and must *reverse* the decision appealed from.

Reversed.

SMITH, Judge, dissenting, with whom KIRKPATRICK, Judge, joins.

This dissent is based on my opinion that there is not such similarity between the marks "Bufferin" and "Buffagum" as to be likely to cause confusion or mistake or deception of purchasers. Similarity is found in the identical initial syllables of the marks. I agree with the Trademark Trial and Appeal Board that such similarity does not warrant sustaining the opposition where the marks are otherwise so different.

In addition to the differences in the names, the goods are specifically different. "Bufferin" is a medicinal tablet and "Buffagum" is a medicinal chewing gum. Opposer's registration asserts use of its name "Bufferin" for "antacid asprin [sic]." The stipulation of fact herein further describes the product as a "preparation" which is "in the form of tablets containing aspirin and certain antacid ingredients."

Applicant asserts use of its mark "Buffagum" for "a chewing gum containing analgesics and antacids." [1] The specimen label which applicant filed with its application describes "Buffagum" as being "for upset stomach, gas, heartburn—due to acid indigestion." It is, according to this label "A *stomach remedy* in mint-

1. The specimen label filed with the application lists the medicinal ingredients in "Buffagum" but does not list any which are commonly recognized as "analgesics."

flavored *chewing gum form* for increased effectiveness and ease of taking."

We are, therefore, dealing not only with different names but also with different goods each of which is specifically employed by the user for a particular medicinal purpose. The use of aspirin for the relief of pain is so well known that I cannot conceive of a user or purchaser being so confused or mistaken or deceived that he would accept an antacid chewing gum "for upset stomach, gas and heartburn" instead of the desired aspirin tablet because of applicant's use of its mark "Buffagum" on its medicinal chewing gum. Neither do I think the presence of the common syllable "Buff" in the two names would be likely to cause such user or purchaser to associate the source or origin of applicant's goods with opposer.

In Libbey-Owens-Ford Glass Co. v. General Aluminum Window Co., Inc., 275 F.2d 947, 47 CCPA 833. I agreed with the majority in finding likelihood of confusion between the marks "Therm-O-Lite" and "Thermopane." As pointed out in the majority opinion the word "lite," is a corrupted form of the word light which has the dictionary meaning of "pane." Thus, the names taken as wholes conveyed the same meaning, while here the names as wholes convey different meanings.

"Buffer" when applied to medicinal preparations is a descriptive term.[2] Opposer's "buffered" aspirin suggests its name "Bufferin." Applicant's "buffered" antacid chewing gum likewise suggests its name "Buffagum."[3]

I think, therefore, on these facts that the rationale expressed by this court in May Department Stores Co. v. Kenya Corp., 234 F.2d 870, 872, 43 CCPA 940, is applicable here. There the names

"Aristocrat" and "Aristosheen" were in issue. The court said:

"It is evident that the final syllables 'crat' and 'sheen' are entirely distinct in sound, meaning and appearance, and that the similarity between the marks under consideration is therefore confined to the 'Aristo' portion. That portion is the combining form of the Greek word 'aristos,' meaning 'the best,' and its inclusion in a mark is therefore generally suggestive of high quality.

"It is well settled that marks cannot be dissected for purposes of comparison, but must be considered in their entireties. Montgomery Ward & Co., Inc. v. Spiegel, Inc., 132 F.2d 144, 30 C.C.P.A., Patents, 721; [56 USPQ 185] Miles Laboratories, Inc. v. Foley & Co., 144 F.2d 888, 32 C.C.P.A., Patents, 714; [63 USPQ 64] Schering & Glatz v. Sharpe & Dohme, Inc., 146 F.2d 1019, 32 C.C.P.A., Patents, 827, [64 USPQ 394]. Nevertheless, it is proper to note that it has frequently been held that marks whose initial syllable or syllables are the same will not be regarded as confusingly similar if the syllable or syllables in question have a descriptive or suggestive connotation and the remaining portions of the marks are clearly distinct. Examples of such cases, with the marks involved, are as follows:

"Alumatone Corp. v. Vita-Var Corp., 183 F.2d 612, 37 C.C.P.A. Patents, 1151, [86 USPQ 359] (Alumatone and Alumikote); Kraft Walker Cheese Co., v. Kingsland, D.C., 75 F.Supp. 105, [75 USPQ 318] (Vegemite and Vegex); Miles Laboratories, Inc. v. Foley & Co.,

2. Hackh's Chemical Dictionary, 3rd Edition (1944 ed.) defines "buffer" as, "any substance which, when added to a solution, resists any change in hydrogen ion concentration on addition of acid or alkali."

3. That "Buff" should be given little trademark significance also seems clear to me

from the third party registrations for medicinal preparations which have not been considered in the majority opinion. These include such names as "Bufflac"; "Buffate"; "Bonobuff"; "Bufosal"; "Buffecillin"; "Buff-caps"; "BufOpto"; and "Bufox."

144 F.2d 888, 32 C.C.P.A. Patents, 714, [63 USPQ 64] (Vitamiles and Vitabuild); Solventol Chemical Products, Inc. v. Langfield, 6 Cir., 134 F.2d 899, [57 USPQ 210] (Solventol and Solvite); Steem-Electric Corp. v. Herzfeld-Phillipson Co., 7 Cir., 118 F.2d 122, [48 USPQ 93] (Steam-O-Matic and Steem-Electric); Vick Chemical Co. v. Kerfoot & Co., Ltd., 80 F.2d 73, 23 C.C.P.A. Patents, 752, [27 USPQ 393] (Vapex and Vaporub); Thomas Kerfoot & Co., Ltd., v. Louis K. Liggett Co., 1 Cir., 67 F.2d 214 (Vapure and Vapex)."

The court there, as I think it should here, found the involved marks distinguishable as entireties.

I think there also is persuasive similarity between the marks here and the marks "Duro-Style Fabrics" and "Durosheen" which were involved in May Department Stores Co. v. Schloss Bros. & Co. Inc., 234 F.2d 879, 881, 43 CCPA 980. There, the court said:

"It is obvious that the only similarity between the marks resides in the word 'Duro'. That word suggests durability, and there are of record copies of registrations of over thirty trademarks for fabrics or wearing apparel which either consist solely of the word 'duro,' or contain it as a part of the mark. It is well settled that combinations of letters which are descriptive of the goods or properties thereof will not be accorded as great weight in considering whether marks are confusingly similar, as words or combinations of letters which are purely arbitrary. North Star Manufacturing Co. v. Wells Lamont Corporation, 193 F.2d 204, 39 C.C.P.A. Patents, 764, [92 USPQ 128]; West Disinfecting Company v. Lan-O-Sheen Company, 163 F.2d 566, 35 C.C.P.A. Patents, 706, [75 USPQ 77]; Rite-Rite Mfg. Co. v. Rite-Craft Company, 181 F.2d 226, 37 C.C.P.A. Patents, 963, [85 USPQ 268]; Miles Laboratories, Inc. v. Pepsodent Co., 104 F. 2d 205, 26 C.C.P.A. Patents, 1272, [41 USPQ 738]; and Franco-Italian Packing Corp. v. Van Camp Sea Food Co., Inc., 142 F.2d 274, 31 C.C. P.A. Patents, 1029, [61 USPQ 369]."

Since the names "Bufferin" and "Buffagum" taken as wholes are distinct in sound, meaning and appearance, and since the goods to which they are applied are specifically different, I do not think the similarity of the names predicated on the common use of the syllable "Buff" is a sufficient basis upon which to sustain the opposition.

Where the only similarity between the marks resides in the initial syllable "Buff," I find my position well stated in the following:

"* * * We recognize that in some situations the presence of a common first syllable in two marks may be sufficient to render the marks, as a whole, confusingly similar. As the Examiner has stated, this more frequently happens when the common syllable is at the beginning of each mark. However, there is certainly no general rule that all marks which begin with the same syllable are confusingly similar.

"We submit that in the present case the common syllable "Buff" has a suggestive significance in relation to the goods in that it implies that the product has been buffered against either an alkaline or acid condition. Because of this the syllable "Buff" appears in a number of marks registered in Class 6. In addition to the two registrations cited, it is present in Reg. No. 418,-640 "Buff-caps", in Reg. No. 364,337 "Bufosal" and in Reg. No. 351,083 "Bufox".

"Because of the presence of "Buff" or "Buf" in a number of trademarks and particularly because of the suggestive significance of the syllable, the public recognizes that it must look to more than this first syllable

to identify a particular source. The mark as a whole must be considered and when this is done, there is no real similarity between applicant's three-syllabled trademark 'Bufferin' and the registrant's two-syllabled trademarks 'Bufflac' and 'Buffate'.[4]

For the foregoing reasons, I would affirm the Trademark Trial and Appeal Board in dismissing the opposition.

4. Quoted from page 2 of the October 5, 1948 response of opposer to the office action of July 2, 1948 rejecting opposer's application Serial No. 542,436 filed November 26, 1947 which resulted in Registration No. 566,190 issued November 4, 1952 for the mark "Bufferin."