49 CCPA
**JOHNSON & JOHNSON, Appellant,**

v.

**VEON CHEMICAL CORPORATION, Appellee.**

**Patent Appeal No. 6786.**

United States Court of Customs and Patent Appeals

May 4, 1962.

Francis C. Browne, Mead, Browne, Schuyler & Beveridge, Washington, D.

C. (William E. Schuyler, Jr., Andrew B. Beveridge and Norman St. Landau, Washington, D. C., of counsel) for appellant.

Judah B. Felshin, New York City, for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPAT-RICK.*

SMITH, Judge.

Appellant, as owner of numerous registrations of its mark "PERMACEL",[1] opposed registration of appellee-applicant's mark "PERMA LINE", application Serial Number 51,833, filed May 16, 1958, for a "Thermoplastic Road Marking Compound". The Trademark Trial and Appeal Board, in dismissing the opposition, concluded "that the differences between the marks are sufficient to obviate any reasonable likelihood of confusion or mistake or deception of purchasers". Opposer has appealed.

■■ We shall first consider the similarities of the two marks, PERMACEL and PERMA LINE. We agree with appellant as stated in its brief that:

"While it is well settled that marks cannot be dissected for purposes of comparison, but must be considered in their entireties [Montgomery Ward & Co., Inc. v. Spiegel, Inc., [132 F.2d 144], 30 C.C.P.A. (Patents) 721, 56 USPQ 185; Miles Laboratories, Inc. v. Foley & Co., [144 F.2d 888], 32 C.C.P.A. (Patents) 714, 63 USPQ 64], it is also well settled that this Court, in considering the significance of the registered marks in their entireties, can consider the respective portions thereof, including descriptive or disclaimed portions, to determine the dominant part of each of the marks, West Disinfecting Co. v. Lan-O-Sheen Co., supra [163 F.2d 566, 35 C.C.P.A. (Patents) 706]. * * *"

A visual comparison of the two marks indicates that the only similarity or common part is the prefix "perma". The Trademark Trial and Appeal Board found that "this feature possesses an obvious connotation of permanence which is a desirable characteristic of the goods of both parties" and held:

"* * * Considering the nature of this term, it is concluded that the differences between the marks are sufficient to obviate any reasonable likelihood of confusion or mistake or deception of purchasers."

■ Appellant has attempted to show that the "perma" in PERMACEL has no such connotation, as shown in the record by the testimony of witness Hickok:

"Q134. What is Perma, that part of your mark, what does that indicate to you? A. Nothing. It's

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

1. Reg. No. 388,238, issued June 17, 1941 to a predecessor for pressure-sensitive adhesive tapes.

Reg. No. 433,551, issued Oct. 21, 1947 to a predecessor for adhesive cements in liquid and solid form.

Reg. No. 511,583, issued June 28, 1949 to a predecessor for heat-sealing tape.

Reg. No. 535,567, issued Jan. 2, 1951 to a predecessor for adhesive tape dispensers.

Reg. No. 588,607, issued Apr. 20, 1954 to a predecessor for tack cloth cut to size for collecting dirt and dust prior to finishing or refinishing the surfaces of automobiles, furniture, and the like and for cleaning and polishing purposes.

Reg. No. 596,555, issued Oct. 12, 1954 to a predecessor; and Reg. No. 609,362, issued July 26, 1955 to a predecessor for abrasives and abrasive coated fabrics including sandpaper.

Reg. No. 597,932, issued Nov. 9, 1954 to a predecessor; and Reg. No. 625,429, issued Apr. 17, 1956 to a predecessor for publications issued at irregular intervals.

Reg. No. 633,833, issued Sept. 4, 1956 to a predecessor for steel wool pads.

Reg. No. 639,274, issued Jan. 1. 1957 to a predecessor for electrical insulation.

Reg. No. 642,428, issued March 5, 1957 to a predecessor for pre-paint cleaners, wax, silicone, and oil removers and degreasing preparations.

just part of Permacel trademark, to me.

"Q135. It wouldn't have anything to do with the word 'permanent', as far as you know? A. No.

This testimony of appellant's witness Hickok, the "Product Director of Permacel", taken together with the third party registrations of record indicates that the prefix "perma" alone has very little distinctiveness as an indicator of source or origin of appellant's goods.

The only common part of the two marks is the non-distinctive portion "perma" while the other parts of the marks differ so in spelling, meaning, sound and appearance that the entire marks are not similar.

We do not, however, rest the present decision on the foregoing analysis alone. Section 2(d) of the Lanham Act (15 U. S.C.A. § 1052(d)) requires that the confusion, mistake or deception of purchasers therein referred to must be that arising from applicant's use of its mark on its goods. Here the goods of applicant on which its mark "PERMA LINE" is used are goods of a highly technical nature which are marketed through municipal engineers and traffic officials, by contract, and not over the counter, and usually applied by contractors using special equipment supplied by applicant.

Applicant's witness Lipkins described as follows the product on which the mark "PERMA LINE" is used:

"Q5. What is the business of Veon Chemical Corporation? A. To manufacture and sell a thermoplastic traffic marking material.

"Q6. Do you also do the actual marking? A. We do not do the installation work. The installation work is done by private contractors, who are agents of ours, who sell to municipalities, whether it be city, state, county. Then the installation is done by these people after they have bought the necessary equipment to install this material.

"Q7. What does this equipment consist of? A. It consists of a master kettle, No. 1, which melts the material, the hardened material, to a liquid, brought to a temperature of 400 degrees Fahrenheit. The material is then drained out from the master kettle into an applicating machine, which applies the material to the pavement.

"Q8. Under what mark do you sell this material? A. Under the name 'Perma-Line.'

"Q9. Do you also sell the machines? A. We sell the master kettle to the distributor. We retain possession, however, loan the applicating machine to each one of the distributors.

"Q10. In what form does this Veon come, or in what form is it sold? A. It comes in a block, a 25-pound block, which is actually of no value to anybody until it is melted down and brought up to the temperature, and then applied to the pavement.

"Q11. These distributors who install, or who apply the marks with that equipment, is that done by contract, or, how is that done, with their customers? A. It is done by sale to the municipality, and then the application to the pavement is done by the contractor.

"Q12. And your Perma-Line material is never sold over the counter or by the piece to— A. No, it cannot be. Because Perma-Line material is of no value whatsoever unless it is melted down and brought up to temperature, which is 400 degrees Fahrenheit."

The goods of opposer most nearly like the goods of applicant and on which it uses its mark "PERMACEL" are, "Pressure-Sensitive Adhesive Tapes," which may be used as a traffic marking material of a somewhat temporary or transient nature.

We think the most closely competing goods of the respective parties are so different that when such goods are marked with the respective marks in issue,

there is no likelihood of confusion or mistake or deception of purchasers. The fact that the product of applicant is a highly technical product, a 25 pound block of plastic which must be melted before it can be used, clearly distinguishes it from the pressure sensitive tapes to which opposer applies its mark. Applicant's product purchased and used as it is by discriminating technical purchasers and users only, indicates the goods are of such a widely diverse nature that we are unable to see where purchasers of applicant's goods would be likely to be confused, mistaken or deceived as to the origin of such goods.

As was stated in L. Nachman & Son, Inc. v. E. Lasner, Inc., 263 F.2d 342, 46 C.C.P.A. 780,

"In cases such as the instant one, where there are specific differences in both the marks and the goods involved, all the differences must be taken into consideration. In re Myers, [Etc.,] 201 F.2d 379, 40 C.C.P.A. 747; Princess Pat, Ltd. v. Tursi, 230 F.2d 440, 43 C.C.P.A. 795."

Thus, considering the specific differences in both the marks and goods of applicant and opposer, we find no likelihood of confusion or mistake or deception of purchasers.

Appellant contends that applicant's mark "PERMA LINE" differs from appellant's mark only by the use of the word "line" in place of the syllable "cel" and since "line" is descriptive of applicant's product, that such a difference cannot be relied upon to obviate confusion or mistake or deception of purchasers arising from the common use of what appellant terms the "distinctive" portion of the marks. It seems to us this argument is based on two unsupported premises. First, that applicant's product is a "line." As previously indicated, applicant's product is a 25 pound block of thermoplastic material, which when melted may be so applied as to form a line. We can find no definition of the word "line" which supports appellant's first premise. Second, that the first syllable of both marks, "Perma" is the distinctive portion of the mark. We have previously explained our reasons for disagreeing with this premise.

The decision of the board is affirmed.

Affirmed

MARTIN, Judge, sat but did not participate because of illness.