**FOOD SPECIALTY CO., INC. (New England Fish Company, By Substitution), Appellant,**

**v.**

**KAL KAN FOODS, INC., Appellee.**

**Patent Appeal No. 9033.**

United States Court of Customs and Patent Appeals.

Dec. 20, 1973.

Robert W. Beach, Seattle, Wash., attorney of record, for appellant; George R. Jones, Beale & Jones, Arlington, Va., of counsel.

Stephen Grubb, Los Angeles, attorney of record, for appellee; Francis D. Thomas, Jr., Arlington, Va., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board (TTAB), 171 U.S.P.Q. 315 (1971), dismissing appellant's opposition to the registration by appellee

of application serial No. 319,771, filed February 24, 1969, claiming first use in January 1968, of the following mark for canned cat food:

The basis of appellant's opposition is solely its ownership and registration of the trademark "KITTY" for cat food, Reg. No. 702,658, issued August 9, 1960.[1] Heavy reliance is also placed on two prior decisions of this court involving the same registration, Food Specialty Co. v. Standard Products Co., 406 F.2d 1397, 56 C.C.P.A. 1005 (1969), in which we reversed a decision of the TTAB dismissing appellant's opposition to the registration of "Pretty Kitty" for cat food, and Food Specialty Co. v. Catz American Co., 433 F.2d 817, 58 C.C.P.A. 710 (1970), in which we reversed a decision of the TTAB denying appellant's petition to cancel a registration of "HERE, KITTY!" for canned cat food.

We now consider an opposition to the registration of another mark for canned cat food which includes the word "KITTY," but in quite a different context. Appellee seeks to register a composite mark, as shown above, in which the word "KITTY" plays an entirely different role or functions in quite a different manner than it did in "Pretty Kitty" and "HERE, KITTY!".

The goods of the parties being the same and appellant being the prior user, the sole issue, as the board said, is "whether or not the sale of cat food under the marks here in issue is reasonably likely to cause confusion in trade as to origin or sponsorship." (15 U.S.C. § 1052(d).) For a summary of the facts established and the evidence of record, we refer to the opinion of the board.

It is basic to our consideration, of course, that we must look at appellee's mark as a whole. Burroughs Wellcome & Co. v. Mezger Pharmacal Co., 228 F.2d 243, 43 C.C.P.A. 703 (1955); Colgate-Palmolive Co. v. Carter-Wallace, Inc., 432 F.2d 1400, 58 C.C.P.A. 735 (1970). The board correctly so held. Appellant appears to suggest that we should ignore this basic rule for the rea-

1. The registration issued to Food Specialty Co., Inc., but was assigned, together with the goodwill of the business etc., on March 29, 1972, to New England Fish Company, a corporation of Maine having its principal place of business in Seattle, Washington. The assignment is recorded in the Patent Office.

son that "KAL KAN" is the subject of Reg. No. 715,530, the diamond band is the subject of Reg. No. 763,629, the cat's head is simply decoration and the words "KITTY STEW" are separable from the other three elements and constitute the dominant element of the mark. Neither the fact that one can mentally divide or dissect the mark into four components nor the fact that two of them are the subject of prior registrations is a valid reason for not considering the mark appellee seeks to register as a whole. We agree with the board that the reason we must do so is that it is the whole mark that makes the commercial impression on the purchaser.

Another point urged on us by appellant is that "KAL KAN" is a "house mark" and that in several cases[2] this court and other tribunals have held marks likely to cause confusion notwithstanding the simultaneous use with those marks of house marks. We have reviewed those cases but do not consider them to present parallel situations to the joint use of "KAL KAN" and "KITTY STEW." The distinguishing feature is that in each of the cited cases the mark used with the house mark was an arbitrary mark while here, as we shall point out, "KITTY STEW" is not arbitrary.

While appellant has an "incontestable" registration of "KITTY" alone as a trademark for cat food, there are inherent limitations on its right to control use of the word "kitty" in connection with products for cats, even including cat food, because of its obvious descriptive connotation. There is nothing obscure about what "kitty" means. We scarcely need to cite a dictionary. Practically every English-speaking person absorbed into his vocabulary the words cat, kitten, and kitty in infancy; if he did not there was something unusual about his environment. We see no need to discourse upon their meanings.

In appellee's composite mark, "KAL KAN" is clearly the dominant origin-indicator. It looks like one, it is the origin-indicating portion of the name of the company which is the source of the product, and the evidence of record shows that there are or have been some twenty-seven other "KAL KAN" food products for dogs and cats. The two common English words "KITTY STEW" thereunder are obviously intended to and do convey a meaning other than the origin of the goods. Literally, there are two possible meanings: a stew of kitties or a stew for kitties. The former is so improbable in this country[3] that there is virtually a single realistic meaning, a stew of some kind to be fed to cats or kittens. This is so even though, as appellant points out, the specimen label also says "FOR CATS." Appellee makes much of the fact that the examiner of its application, in what was obviously his first office action, said, "The descriptive wording KITTY STEW should be disclaimed apart from the mark shown," and that such a disclaimer was filed. While we do not see any particular legal significance to the existence of the disclaimer with respect to the issue in this case, we accept the examiner's requirement as evidence that he, at least, considered the words descriptive. We likewise regard them as descriptive of the

---

2. Celanese Corporation of America v. E. I. duPont de Nemours & Co., 154 F.2d 143, 33 C.C.P.A. 857 (1946); The Firestone Tire & Rubber Co. v. Montgomery Ward & Co., 150 F.2d 439, 32 C.C.P.A. 1074 (1945); Ex parte The Stadler Products Co., 87 U.S.P.Q. 163 (Comr.Pats.1950); Menendez v. Holt, 128 U. S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888); William Sanderson & Son Ltd. v. Fernandes and Co., 137 U.S.P.Q. 165 (TTAB 1963); California Prune & Apricot Growers Assn. v. Dobry Flour Mills, Inc., 101 F.2d 838, 26 C.C.P.A. 910 (1939); and Richard Hellman,

Inc. v. Oakford & Fahnestock, 54 F.2d 423, 19 C.C.P.A. 816 (1932).

3. We are here taking judicial notice of the general sentiment toward kitties which differs from that toward rabbits (bunnies), chickens, ducks, and other sometime small-animal pets. We limit the observation to this country and the domestic operation of domestic trademark law because elsewhere in the world the situation and sentiment may well be different.

product, meaning that the contents of the can is a stew for kitty-cats.

The board has accurately pointed out the basic difference between our prior decisions involving appellant's trademark and the situation here in saying that we found that the addition of "PRETTY" or "HERE" to the term "KITTY" was insufficient to create a commercial impression sufficient to distinguish the resulting marks from appellant's trademark "KITTY," but that those decisions are not a

   \* \* \* precedent for the broad proposition that the inclusion of the term "KITTY" as a part of a unitary mark used for cat food must necessarily be in conflict with opposer's "KITTY" mark.

Appellant has argued that appellee's composite mark incorporates its registered *mark* in its entirety. We cannot agree with that as a legal proposition. Considering that its mark consists of a common English word and that that word, as used in appellee's composite mark, merely conveys its common meaning, rather than serving to indicate origin, we have to say to appellant that under these circumstances, its *trademark* is not incorporated in appellee's mark at all. When "kitty" is used with other words only as an adjective modifying "stew," to indicate that the stew is for kitties, it is devoid of the trademark character or "secondary meaning" it has in other contexts in which it indicates origin. We also point out that we are not dealing with an attempt to register "KITTY STEW" but only the totality of the mark as above illustrated.

The decision of the board is affirmed.

Affirmed.