47 CCPA

## COLUMBIAN STEEL TANK COMPANY
### v.
## UNION TANK AND SUPPLY COMPANY
(Butler Manufacturing Company, Assignee, Substituted).
Patent Appeal No. 6540.

United States Court of Customs and Patent Appeals.
April 6, 1960.

Worley, Circuit Judge, dissented.

Alfred R. Fuchs, Kansas City, Mo., for appellant.

Thomas E. Scofield, Kansas City, Mo., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN and SMITH, Judges.

RICH, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board dismissing appellant's opposition to the registration of appellee's trademark on application serial No. 11,310 filed June 29, 1956. The goods are described in the application as "Metal Tanks" and the mark consists, as shown in the application drawing, of a pair of terrestrial hemispheres, side by side, centrally disposed on which in large block letters is the word "Union" under which is a long narrow panel or ribbon with reverse folded ends and over which are the words "World Wide Service." The specimen label filed with the application, showing how the aforesaid mark sought to be registered is actually used, contains in addition the words "Sold By" at the top of the label, the words "Tank & Supply Co." on the ribbon under "Union," and under the ribbon "Houston, Texas." The overall impression created by the mark as used is, therefore, that the goods

bearing the label are *sold* by Union Tank & Supply Co. of Houston, Texas, and that that company claims to render world wide service. The two hemispheres, if they are given significance other than mere decoration, tie in with the concept of world wide service since· they depict the world in a conventional cartographic fashion.

Opposer took testimony and introduced many exhibits of labels, catalogs, registrations, advertising, etc. Applicant-appellee did not attend the taking of opposer's testimony and none was taken on its behalf. It has filed no brief in this court and did not appear at the oral argument. Opposer has filed a lengthy brief with us on which it submitted its case without oral argument.

Appellee's application alleges February 1, 1946 as the date of first use of its mark but in the absence of testimony appellee must be restricted to its filing date of June 29, 1956, as the board correctly held. This is not of critical significance as opposer antedates the earlier date by many years with respect to use of the mark on which it relies. Appellee's application was filed by Union Tank & Supply Company, a Delaware corporation doing business in Houston, Texas, and two and a half months later, on September 15, 1956, Union assigned it with the good will of the business symbolized by the mark to Butler Manufacturing Company, a corporation of Missouri doing business in Kansas City, Missouri.

Opposer, Columbian Steel Tank Company, also located in Kansas City, Missouri, is a partnership consisting of William F. and Joseph M. Kramer and Helen Kramer Biersmith which has succeeded to the business of Andrew A. Kramer who did business under the present company name. The literature in evidence variously states that the business was established in 1893 or 1894. While the present actual sales were not brought out, it is now obviously a very substantial manufacturing business. Its principal products, accounting for about 75% of its sales, are tanks of one kind or another, made of sheet metal and ranging in size from 10 gallon to 10,000 barrel (420,000 gallon) capacity. At one time a 27,000 barrel tank was made. The larger tanks are of the type used for storage of water, oil and other liquids, and solids such as grain, either as bins or elevators. They may be of welded or bolted construction. Tank truck bodies are part of the line which also includes possibly as many as 200 other miscellaneous items we need not consider in view of the limitation of appellee's application to metal tanks.

Opposer principally relies on a mark which it has used since 1915, and on which it has several registrations, which we shall call its "world symbol" mark. It is a representation of the globe showing the western hemisphere, around which in an equatorial orbit is a ribbon or band bearing the slogan "Tanks For The World." In 1915 opposer obtained copyright registration No. 18437 on this world symbol as a label and deposited a copy of it on April 14, 1915. The testimony of Mr. Culver, sales engineer with opposer continuously since 1910 (also with them in 1907 and 1908), one of the two witnesses called, and of the other witness, Mr. Robinson, advertising manager, employed by the opposer since 1933 and in his present capacity since 1936, shows that this world symbol, associated with opposer's name in one way or another, has been in continuous use from 1915 to the present time. Eight trademark registrations thereof are in evidence for different products, it being sufficient for this case to refer to the following which include metal tanks among the enumerated goods: Under the 1905 Act, Reg. No. 369,121, July 18, 1939, with the ·company name and address superposed on the peripheral portion of the globe, and No. 411,008, January 2, 1945, without the company name and address; and under the 1946 Act, Reg. No. 562,495, August 5, 1952, 15 U.S.C.A. § 1051 et seq., the world symbol with a panel beneath it bearing the word "Columbian," the symbol being the more prominent part of the mark. Other ex-

hibits show that the practice of opposer has been and is to associate this world symbol with its name throughout its business as, for example, on letterheads, catalog covers, individual catalog pages, shipping tags, envelopes and the like. The company slogan appears to be "Tanks For The World" and this is associated with the word "Columbian" or the company name, usually in conjunction with the world symbol which includes the slogan. One catalog in evidence shows on its cover an aerial view of the Kansas City plant on the several buildings of which in large letters or on roof signs appear the company name and the "Tanks For The World" slogan. The cover of this same catalog features the world symbol, i. e. a globe and its slogan, floating above the plant and occupying a third of the page. The world symbol is likewise displayed on other catalog front and back covers, sometimes in large and sometimes in small size.

Opposer's large, bolted, oil and grain storage tanks are erected out of doors, adjacent railways and highways in many cases, and it has been the practice to apply to them, so as to be clearly visible to passers-by, three foot high decal labels, including, with about equal prominence, the world symbol mark, the company name and the words "Columbian Tanks." Catalogs and advertisements feature photographs of tanks so marked. Smaller tanks for "L.P." liquified petroleum) gas which are also located out in the open are marked with a foot-long decal label featuring a three-inch world symbol mark. Another similar label is applied to miscellaneous other tanks and similar structures used by farmers, gas and oil service stations and the like. Tens of thousands of catalogs bearing the world symbol have been distributed to dealers and prospective purchasers, millions of pieces of business stationery bearing it have been used and the witness Robinson estimated that some ninety million reproductions of advertisements featuring the world symbol had appeared in various mass media directed toward those having some need for tanks.

■ It is an inescapable conclusion from the evidence that the world symbol mark of opposer has become as well known to users and prospective users of tanks, and to others seeing the tanks already in use, as the opposer's name and that the mark and the name have become associated in the minds of such persons so that the world symbol mark would suggest opposer or some connection with opposer.

On the basis of this conclusion it is our opinion that the prominent use of two hemispheres, representative of the world, on metal tanks would be likely "to cause confusion or mistake or to deceive purchasers." The addition in appellee's actual label of the words "World Wide Service" would, it seems to us, aggravate the situation by further emphasizing the "world" aspect of the mark. We therefore hold that the mark applied for should not be registered.

The board reached the opposite conclusion, after making the assumption that the tanks of the parties move through the same channels of trade to the same average purchasers, on the basis that the marks in their entireties do not look alike, sound alike, or have similar connotations. The board opined that "The products are likely to be ordered by the word marks 'Union' and 'Columbian'."

We do not think it is of much significance in this case how the goods would be *ordered*. Through more than forty years of continuing use of its highly publicized world symbol mark opposer has built up an association in the public mind between that mark and tanks of its manufacture—Columbian, "Tanks For The World," a picture of a globe representing the world. Opposer has consistently fostered this association by its use of the world symbol and through its advertising to the point where we believe the world symbol mark is as much indicative of origin of the goods as the name Columbian. We do not see how another could now use a picture of the world in the form of a globe or a map of a hemisphere on the same goods without confusing or deceiving purchasers

as to origin. There is nothing about a globe or a map that is in the least suggestive of tanks or any of their characteristics. While the use of two hemispheres by appellee makes it easy to distinguish the marks, we do not think that in effect duplicating opposer's mark eliminates likelihood of confusion. Whatever goodwill attaches to a symbol of the world as a trademark in the tank field belongs to opposer since it created that goodwill.

We disagree with the board's conclusion that the marks do not look alike, because two hemispheres look very much like a duplication of one hemisphere. Duplicating a symbol would not ordinarily destroy its primary significance. We disagree with the conclusion that the marks do not have similar connotations, because they have identical connotations. As to sounding alike, we think that this rule of thumb has no bearing on the issue here. Symbols of this kind do not sound. The board probably reached its conclusion as to sound by comparing Columbian with Union, for sound can be attributed to these parts of the marks; but the issue in this case is not the likelihood of confusion from the use of those names but rather whether confusion is likely to result from the use of appellee's *whole* mark in view of opposer's use of its *world symbol* mark. That is the case presented by the opposer. The board does not appear to have considered this issue at all. The board did compare the phrases "World Wide Service" and "Tanks For The World," concluding that these would be insufficient to support a finding of likelihood of confusion and with this we agree, considering these phrases by themselves.

■ We have no doubt that the board was strongly influenced by the prominence of the display of the word "Union" in appellee's mark. Here too we have a feature which makes it easy to distinguish the marks but it is not the possibility or even the ease of distinguishing the marks which governs. The statute prohibits the registration of a mark

(Sec. 2(d), 1946 Act, 15 U.S.C.A. § 1052 (d)) which, when applied to the goods of the applicant, is likely *to cause* confusion, mistake or deception *of purchasers*. It is not a question of whether people will confuse the marks but of whether the marks will confuse people. The incorporation into a new mark for tanks of the essence of Columbian's world symbol mark as a prominent feature is bound to be confusing, no matter what else is added.

■ It is also possible that the board concentrated its attention on the mark as depicted in the application drawing which contains less than the whole of the mark as actually used. When the actual label is viewed with its notation "Sold By" at the top, above "Union," it is not so clear that "Union" would counteract the impression that there is some connection with opposer as a manufacturer of tanks. It wil be observed that the statute does not require close similarity *of marks* to justify the refusal of registration but uses the expression "*so* resembles a mark registered * * * or * * * previously used * * * by another" (emphasis ours) as to be likely to create confusion, mistake or deception. We think there is *such* resemblance here, on the basis of the evidence showing how opposer has built up the picture of the globe and its associated slogan "Tanks For The World" as an outstanding and well-known symbol of its entire business, 75% of which is metal tanks.

The decision of the board dismissing the opposition is reversed.

Reversed.

MARTIN, Judge, concurring.

I concur in the result only for the reason that doubt as to likelihood of confusion exists in my mind and I resolve that doubt against the newcomer.

WORLEY, Chief Judge (dissenting).

In my opinion the reasoning and conclusion reflected in the following ex-

cerpt from the opinion of the Trademark Trial and Appeal Board are sound:

"The marks in their entireties *do not* look alike; they do not sound alike and they do not have similar connotations.

"The products are likely to be ordered by the word marks 'Union' and 'Columbian'. The words 'World Wide Service' in applicant's mark and the words 'Tanks for the World' in opposer's mark suggest that both parties do world wide business, but this is insufficient to support a finding that applicant's mark so resembles opposer's as to be likely, when applied to metal tanks, to cause confusion or mistake of purchasers."

I would affirm.