48 CCPA

DILLY MANUFACTURING CO., Inc.,
Appellant,

v.

W. E. BASSETT COMPANY, Appellee.

W. E. BASSETT COMPANY, Appellant,

v.

DILLY MANUFACTURING CO., Inc.,
Appellee.

Patent Appeal Nos. 6585, 6587.

United States Court of Customs
and Patent Appeals.
Dec. 8, 1960.

Robert I. Dennison, Washington, D. C. (Harry Sommers, Newark, N. J., of counsel), for Dilly Mfg. Co., Inc.

Mitchell & Bechert, New York City (Roy C. Hopgood and John M. Calimafde, New York City, of counsel), for W. E. Bassett Co.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

WILLIAM H. KIRKPATRICK, Judge.

Dilly Manufacturing Company made application for registration of its trademark, registration was refused upon opposition by the Bassett Company, and Dilly took this appeal (No. 6585). The trademark of the application consists of the words "Klipper King" together with an outline drawing of a crown, the whole being arranged in a unique manner. The letter "K" placed on the left is tall enough to serve as a common initial letter for both words, the letters l i p p e r following it on the upper line and i n g on the lower. In addition, the "K" has on the top of its upright a crown slanted to the left much in the manner of a hat hung on a pole. In order to differentiate between classes of its products, the appellant-applicant uses in association with the mark the notations "4 in 1," "6 in 1," and "7 in 1."

The applicant's goods as stated in the application are "finger nail clippers."

The opposer, since prior to the applicant's adoption of its trademark, has used the mark "Kustom King" for a deluxe line of toenail and fingernail clippers. Its goods are advertised and sold exclusively to jobbers dealing in advertising specialty products, who resell to business concerns which in turn distribute the goods with their trade names imprinted on them, as gifts to their customers, for the purpose of advertising their own particular business. There is no evidence as to the manner in which the opposer uses its mark upon its goods, but in its promotional literature it prints the words in broad block letters, "King" below "Kustom," and upon the upright of the "K" in "Kustom" it sometimes hangs a slanted crown resembling that of the applicant.

The Board found that the mark of the application so resembles the opposer's mark "Kustom King"[1] as to be likely to cause purchaser confusion and to lead purchasers to believe that "Klipper King" is another product in the opposer's line. With this finding we agree.

It is to be borne in mind that the applicant's mark consists not only of words but, in addition, a symbol. The opposer's promotional literature has the same symbol displayed in the same way. Admittedly, there is nothing unusual in the idea of associating crowns with kings, but in this case the crowns are both associated with the letter "K" of the misspelled first word rather than with the word "King," both in the same unique manner. In fact, when one looks at the two marks, the crown hanging on the upright of the "K" is a prominent feature of both. In Columbian Steel Tank Co. v. Union Tank and Supply Co., 277 F.2d 192, 196, 47 CCPA 900, this court found likelihood of confusion between two marks on the basis of a similarity between the designs with which words were displayed. The word marks in that

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'CONNELL*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

[1] The board also dealt with the opposer's mark "Pocket King" in connection with its "Kustom King," but, in view of the conclusion reached herein, we need not consider it.

case ("Union" and "Columbian"), taken alone, were not in the least alike and certainly far less likely to cause confusion than the words involved in this appeal. However, the court said, "the issue in this case is not the likelihood of confusion from the use of those names but rather whether confusion is likely to result from the use of appellee's *whole* mark in view of opposer's use of its *world symbol* mark."

■ Here we have an applicant desirous of registering a mark for articles which are the same as the opposer's goods and which might easily be accepted by the public as coming from the opposer. The newcomer has adopted a mark having the following features in common with the opposer's mark, as used by it: (a) two words, the second of which is the same as the opposer's, (b) a first word not much like the opposer's but, like the opposer's, misspelled by using a "K" in place of an initial "C," and (c) a crown apparently hung upon the top of the vertical part of this "K." We think they are clearly similar enough so that confusion is likely to result.

The decision of the board is affirmed. Affirmed.

### Appeal No. 6587.

In addition to its marks "Kustom King" and "Pocket King" referred to above, the opposer has a mark "Clipper King," the first sale under the latter mark having been made on March 5, 1957. The applicant proved a sale under its mark as early as January 23, 1957.

No. 6587 is a cross-appeal filed by the opposer assigning as error the board's holding that "the record shows that applicant has used 'Klipper King' since prior to opposer's first use of 'Clipper King'."

While that question appears to be moot, so far as applicant's right to register the "Klipper King" mark is concerned, in view of our decision in Appeal No. 6585, it has been made the sole subject of Appeal No. 6587 and we therefore think it proper to decide it.

■ The opposer and cross-appellant contending that the law does not countenance the creation of a trademark based on a single isolated sale, argues that the applicant's evidence shows only one sale prior to October 1957. However, we think that the board's finding was amply justified by the record and that the evidence shows a general and continuous use of the mark since the earlier date.

The witness, Edward Goldstein, the applicant's sales manager, produced a number of bills which he testified were representative for the years 1957 and 1958, showing the billing of "Klipper King" to customers and testified that during those years there was a continuous billing of customers for "Klipper King." He was not cross-examined on this point and his testimony stands unchallenged. The fact that the first representative bill of those produced was sent in January and the second was dated in October does not negative his testimony as to the continuous use of the trademark, and we find no reason to hold that the board should have disbelieved him.

The decision of the board upon this point is affirmed.

Affirmed.