48 CCPA

Jerry FINN, Appellant,

v.

COOPER'S INCORPORATED, Appellee.

Patent Appeal No. 6672.

United States Court of Customs
and Patent Appeals.

July 26, 1961.

Worley, Chief Judge, dissented.

Kimmel & Crowell, A. Harry Crowell, Washington, D. C., for appellant.

Gerrit P. Groen, Byron, Hume, Groen & Clement, Chicago, Ill., for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

SMITH, Judge.

The Trademark Trial and Appeal Board granted appellee-petitioner's petition to cancel appellant-registrant's registration No. 654,810, registered November 19, 1957 (124 USPQ 10). The mark sought to be cancelled as shown in the drawing which appears in the published opinion of the Trademark Trial and Appeal Board consists of the words "Jerry Finn" separated by a diagonal line and enclosed within a rectangular border. At the left of the word "Jerry" and superimposed over a portion of the border is a representation of an old fashioned horse hitching post in which the upright portion is in the form of a human figure appropriately clothed in a costume associated with jockeys, horse racing and horse handling. The figure is shown in a part-turned position facing towards the right, with the left arm upraised and holding a hitching ring and the right arm is bent with the back of the hand placed against the hip.

[1]. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

The goods set forth in the registration are men's and young men's coats, suits and trousers, ties, sweaters, shirts, hats, and women's shirts.

It is stipulated (1) that the customers of Jerry Finn usually call for the goods by the name "Jerry Finn," (2) that the appellant's mark is always used in the form described, in all advertising and on or in connection with the sale of the goods and (3) that there have been no instances of any actual confusion.

Petitioner asserts as the basis of its petition for cancellation that:

"* * * registrant's design mark so nearly resembles petitioner's design trademark as used by petitioner in connection with its goods as to be likely to cause confusion in the minds of the public and to deceive purchasers. The public, on seeing the Boy-Design trademark on registrant's garments will believe that they are petitioner's garments and petitioner avers that the registration by registrant of said trademark interferes with the use of petitioner of its Boy-Design, embarrasses petitioner in the free use of its trademark and is injurious and damaging to petitioner."

Petitioner's mark [1] consists of the representation of a jockey in full jockey dress and is also shown pictorially in the published opinion of the Trademark Trial and Appeal Board.

Comparison of registrant's and petitioner's marks shows them to be similar insofar as both utilize the representation of a human male figure garbed in costumes associated with jockeys and horse racing. They differ in the postures of the figures and in details of the costumes shown. The figure is shown as but part of appellant's composite mark which includes a rectangular box border in which the name "Jerry Finn" appears. No such border or name is used by petitioner. Petitioner's mark also differs from that of appellant in that the jockey carries a whip in the left hand instead of the hitching ring as shown in appellant's mark.

The issue here is whether appellant's registered mark so resembles petitioner's registered mark as to be likely to cause confusion or mistake or deceive purchasers within the meaning of Section 2(d) of the Lanham Act (15 U.S.C.A. § 1052).

The test is whether there is likely to be confusion in the minds of the public with regard to the origin of the goods bearing the allegedly conflicting mark. Nestle's Milk Products, Inc. v. Baker Importing Company, Inc., 182 F. 2d 193, 37 CCPA 1066. Such a test is, by its very nature, subjective. Such being the case, prior decisions are of little help in arriving at a conclusion, inasmuch as each case must be determined on the basis of its own particular facts. Kitchen-Quip, Inc. v. Sunbeam Corporation, 222 F.2d 265, 42 CCPA 869.

While the issue must also be determined by considering the marks of the opposing parties in their entireties, Apollo Shirt Company v. Enro Shirt Company, Inc., 165 F.2d 469, 35 CCPA 849; Kitchen-Quip, Inc. v. Sunbeam Corporation, supra, it is necessary when dealing with symbols of the type here in issue to determine also the extent to which the pictorial symbol, as distinct from the words used, has come to indicate the source or origin of goods with which the symbol is used. Columbian Steel Tank Co. v. Union Tank & Supply Co., 277 F.2d 192, 47 CCPA 898.

While the courts have also ruled that, in determining the question of likelihood of confusion, consideration should be given to the appearance, sound and meaning of the mark, Hancock v. The American Steel & Wire Co. of New Jersey, etc., 203 F.2d 737, 40 CCPA 931; Firestone Tire & Rubber Co. v. Montgomery Ward & Co., Inc., 150 F.2d 439, 32 CCPA 1074; The Quaker Oats Co. v. St. Joe Processing Co., Inc., 232 F.2d 653, 43 CCPA 892,

---

1. Jockey figure, Registration No. 409,514, registered October 10, 1944, published under Section 12(c) Nov. 16, 1948, Section 15 affidavit filed on March 8, 1954.

we pointed out in the Columbian case that " * * * this rule of thumb has no bearing on the issue here. Symbols of this kind do not sound." [47 CCPA 898, 277 F.2d 196.] Here, as in the Columbian case, the issue is whether confusion, mistake or deception of purchasers is likely to result from the use of the *whole* challenged mark in view of petitioner's prior use and registration of its *jockey symbol* mark.

Arbitrary symbols of the type here in issue like all other trademarks acquire the ability to indicate source or origin of goods when they are used and become associated by the public with the goods of a particular user. The colorful figure of the jockey was used by petitioner many years before registrant adopted the figure shown in the mark sought to be cancelled. The record shows extensive use and advertising by petitioner over many years long prior to registrant's selection of a similar figure forming the dominant part of its mark.

In dealing with such marks, we must consider the visual impact of the marks on the minds of the prospective purchasers who view them. Such symbols are readily recognized by both literate and illiterate prospective purchasers and are as readily associated with particular goods by children as it is by adults. It requires no translation into the words of other languages before it can be recognized as a symbol indicating source or origin of the goods with which it is used. Symbolic marks speak a universal language; they lend themselves to effective display in advertising and sales promotional activity and can thus become the dominant part of the mark on labels, packages, and point of purchase displays. They can catch the eye of the customer and create a lasting general impression. Current mass advertising media utilize symbols which are visually projected into millions of homes of prospective purchasers by television and these symbols frequently are associated with pictures of the goods of a particular user.

We must, therefore, in resolving the issue here, first determine the extent to which petitioner's symbol has acquired purchaser significance as indicating source or origin of its goods and then determine whether there is that likelihood of confusion, mistake or deception of purchasers which is contemplated by Section 2(d) of the Lanham Act.

Petitioner manufactures men's wear, including hosiery, underwear, shirts and related items which it sells through retail stores throughout the United States. In addition, it licenses various companies in the principal countries of the world to manufacture and sell, under its control, these garments and to use its trademarks, which are dominated by the pictorial or design mark showing the jockey figure. The record shows this jockey design mark was first adopted by petitioner in 1940 and has since been continuously used and prominently displayed by it and its licensees on garments, labels, wrappers, boxes, advertising and other promotional material. The mark also was used by petitioner in numerous consumer publications and point of sale displays, including a three dimensional statuette of the mark used on counters in retail stores to identify petitioner's line of wearing apparel. The jockey design mark was also used on petitioner's advertising brochures and other trade media distributed to prospective purchasers by retail dealers. Sales by petitioner in the United States of garments bearing the jockey design from 1940 through 1957 exceeded $156,000,000.

We agree, therefore, with the finding of the Trademark Trial and Appeal Board that:

"There can be no doubt from the record but that as a result of petitioner's long and extensive use and advertising, a representation of a jockey has become well known to the general purchasing public as an indication of origin of its wearing apparel for men."

We pass then to a consideration of the question as to whether there is such similarity between the marks that confusion, mistake or deception of purchasers would be likely.

■ Close examination of the figures used by registrant and petitioner reveals that they create much the same pictorial or visual impression. Both figures are dressed as professional horse riders. Both figures have the knee-length riding boots, riding breeches, center-buttoned long-sleeved riding jacket and cap with visor. Each figure is aptly characterized as that of a jockey, i. e., "One who rides or drives a horse; now, a professional rider of horses in races" (Webster's Collegiate Dictionary, 5th edition, 1941). Registrant admits that the figure used in its mark is identified with horses. While this figure appears to be designed as a hitching post for horses, and is patterned after an old-fashioned statuette of what in an earlier day might have been identified as a stable boy, there is an unavoidable over-all similarity in the figures.

The prospective consumer, thus, is faced with two impressive pictures or symbols as trademarks, both leaving a similar and dominant impact on his mind, both arbitrary in their application as trademarks for wearing apparel, and both emphasized as the dominant parts of the marks by the respective users.

While both parties associate their symbols with word marks,[2] this court has held that there is likelihood of confusion, mistake or deception of purchasers, if the dominant impression created by each picture design is the same, even though different word trademarks are associated with the picture trademarks.

In International Latex Corp. v. I. B. Kleinert Rubber Co., 104 F.2d 382, 383, 26 CCPA 1321, this court considered the question of likelihood of confusion, mistake or purchaser deception arising from marks which included the picture of two babies, one standing and one crawling, and the picture of one baby crawling. What was said by this court there seems to be particularly appropriate here:

"The dominant feature of appellant's mark is a representation of a crawling baby. The baby's *posture* is substantially the same as the posture of the baby in appellee's mark. The crawling baby in appellant's mark is shown in profile facing to the left; whereas, the crawling baby in appellee's mark is shown with its back and rear toward the observer and its head turned so that it is looking back over its left shoulder facing the observer. The *positions* of the two babies, therefore, are different, and, as stated by the commissioner in his decision, if the two marks are placed side by side they are easily distinguishable. However, such a comparison is not the test to be applied in considering the question of confusing similarity of the marks."

In D. J. Bielzoff Products Company v. White Horse Distillers, Limited, 107 F.2d 583, 584, 27 CCPA 722, this court held the words "Red Horse" with a picture of a rearing horse and a rider colored red to be confusingly similar to the words "The White Horse" with a picture of a white horse standing on all fours.

This court has expressly rejected the argument that one may imitate the picture part of a trademark of another, and avoid the likelihood of confusion, mistake or deception of purchasers by using different word trademarks in association with the symbol mark. This rule recognizes the fact that many purchasers retain but a general impression of the symbol mark in their minds, and may not accurately recall the particular brand name associated therewith.

■ Registrant has emphasized that no actual confusion has been shown and has pointed out that a side by side comparison of the marks would reveal such differences that confusion, mistake or deception of purchasers would not be likely. In Rex Shoe Co., Inc. v. The Juvenile Shoe Corp., 273 F.2d 179, 180, 47 CCPA 748, this court had occasion to consider a

---

2. Petitioner's registration shows the Jockey symbol alone, however, the exhibits show use of this symbol in association with the words "Cooper's" and "Jockey."

similar argument and held, as we do here, that:

"The issue here is not likelihood that purchasers would confuse *the marks* on the basis of side-by-side comparison. We think it is reasonable to say that average purchasers of shoes may be confused as to *the origin of the goods* where the two marks here involved are applied to similar shoes. It is, in our opinion, of little or no significance that opposer has produced no evidence of actual confusion."

Appellant also challenges the conclusion of the board wherein it holds that the respective products of the parties on which the marks in issue are used are at least in part identical and otherwise closely related. The registration, here challenged, is for use of the mark on various items of clothing, including, among other things, sweaters and shirts. The Wyss affidavit and the numerous exhibits attached thereto show a wide range of items of clothing made and sold by petitioner under its jockey design trademark.

As we pointed out in Hollywood Water Heater Co. v. Hollymatic Corp., 274 F.2d 679, 680, 47 CCPA 782,

"Section 2(d) of the Trademark Act of 1946 and the unquestioned weight of modern authority in this field does not require a finding of confusing similarity of goods as the basis for sustaining a trademark opposition but instead requires us to determine whether it is 'likely' that the mark when applied to the goods of the applicant will cause confusion or mistake or deceive purchasers."

The petition was properly sustained here when, as found by the Trademark Trial and Appeal Board,

" * * * purchasers familiar with petitioner's wearing apparel for men bearing a jockey figure would be reasonably likely to assume that wearing apparel bearing respondent's mark originated with or was in some way connected with petitioner."

■ While this resolution of the issue is not entirely free from doubt because of specific differences in the figures here employed by the parties as dominant and arbitrary symbols, we resolve the doubts in favor of petitioner as the first user of the jockey symbol. Petitioner's jockey symbol mark had been widely used and advertised and had acquired an important commercial significance many years prior to registrant's adoption of a similar symbol as the dominant part of the registered mark. As the latecomer in the field, registrant had the burden of selecting a mark sufficiently distinctive from the mark of petitioner that confusion, mistake or deception of purchasers would not be likely. Doubts on the issue of confusion or mistake or deception of purchasers are resolved against registrant as the newcomer. California Stucco Products, etc. v. Maas & Waldstein Co., 272 F.2d 398, 47 CCPA 732; Phillips Petroleum Co. v. Knox Industries Corp., 277 F.2d 945, 47 CCPA 948; Michigan Mushroom Co. v. Nash-Finch Co., 278 F.2d 723, 47 CCPA 982.

For the foregoing reasons, the decision of the Trademark Trial and Appeal Board is affirmed.

Affirmed.

WORLEY, Chief Judge (dissenting)

It seems to me the majority gives entirely too much weight to the pictorial representation. The words "Jerry Finn" so commandingly overshadow the miniature figure that it is difficult to see how that mark could possibly be confused with petitioner's pictorial representation of what is clearly intended to, and doubtless does, convey the impression only of a jockey.

I am familiar with the decisions cited by the majority, but see nothing therein which would control the facts here. North Star Manufacturing Co. v. Wells Lamont Corp., 193 F.2d 204, 39 CCPA 764.