51 CCPA

**OWENS-ILLINOIS GLASS COMPANY, Appellant,**

v.

**CLEVITE CORPORATION, Appellee.**

**Patent Appeal No. 7028.**

United States Court of Customs and Patent Appeals.

Dec. 12, 1963.

Francis C. Browne, Washington, D. C., Spencer L. Blaylock, Jr., Toledo, Ohio (William E. Schuyler, Jr., Andrew B. Beveridge and Joseph A. DeGrandi, Washington, D. C., of counsel), for appellant.

John S. Walker, Jones, Day, Cockley & Reavis, Cleveland, Ohio, for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and AL-MOND, Judges.

SMITH, Judge.

The Trademark Trial and Appeal Board dismissed appellant's opposition to the registration of appellee's mark. 134 USPQ 144. The marks in issue are:

Appellee-Applicant [1]

Appellant-Opposer [2]

Appellee is the newcomer and asserts use since September 30, 1958.

The record establishes that appellant's mark, as shown in Registration No. 620,864, in addition to its use as a trademark on the goods named in its registrations, has been used extensively in printed matter of various types, including pamphlets mailed to its shareholders. It has been incorporated in appellant's annual reports for the years 1953 and 1955 and has been employed both as a corporate symbol and as a trademark in connection with promotional material directed to industrial consumers. The mark has been a part of an extensive educational campaign by appellant to familiarize the public and industry with this corporate symbol and mark as an indication of origin of the goods on which it is used. It was stipulated that witnesses would, if called, testify that appellant is conducting research and development work in the electronics field which is expected to lead to further extension of use of its mark to additional items made in whole or in part of glass or plastic, including resistors and electronic tube components.

Appellee did not take testimony or present evidence.

We think the board was in error in dismissing the opposition, since we are unable to accept 1) the finding of the board that the goods of the respective parties "are of such nature that they would not be supposed to originate with a single source," and 2) the finding of the board that "the marks are distinctly different in appearance."

The record does not support the rationale of the board's decision. It is clear from the stipulation of facts that appellant had applied its mark to a wide variety of goods prior to the date asserted by appellee for use of its mark. As we pointed out in Hollywood Water Heater Co. v. Hollymatic Corp., 274 F.2d 679, 680, 47 CCPA 782, 784:

"Section 2(d) of the Trademark Act of 1946 and the unquestioned weight of modern authority in this field does not require a finding of confusing similarity of goods as the basis for sustaining a trademark opposition but instead requires us to determine whether it is 'likely' that the mark when applied to the goods of the applicant will cause confusion or mistake or deceive purchasers."

At the time appellee adopted its mark for transistors and diodes, appellant's registered mark was well known, not only as a mark applied to specific goods but also as its corporate symbol. Appellee, as

1. Ser. No. 63,809 for transistors and diodes.

2. Reg. No. 620,864, Feb. 7, 1956 for bottles, jars, jugs, decanters, drinking glasses and cruets all made of glass.

Reg. No. 621,597, Feb. 21, 1956 for plywood panels.
Reg. No. 622,885, Mar. 13, 1956 for glass building blocks.
Reg. No. 625,122, Apr. 10, 1956, for caps or closures for containers.

the late comer, adopted as its mark a symbol which so closely resembles appellant's registered mark that we think it likely that a purchaser would attribute a common source or origin to goods marked with the respective marks. As this court said in Finn v. Cooper's Incorporated, 292 F.2d 555, 558, 48 CCPA 1132, 1136:

"In dealing with such marks, we must consider the visual impact of the marks on the minds of the prospective purchasers who view them. Such symbols are readily recognized by both literate and illiterate prospective purchasers and are as readily associated with particular goods by children as it is by adults. It requires no translation into the words of other languages before it can be recognized as a symbol indicating source or origin of the goods with which it is used. Symbolic marks speak a universal language; they lend themselves to effective display in advertising and sales promotional activity and can thus become the dominant part of the mark on labels, packages, and point of purchase displays. They can catch the eye of the customer and create a lasting general impression. * * *"

Here, as in the Finn case, supra, the prospective consumer is faced with two symbols as trademarks, both of which leave a similar and dominant impact on his mind, and both of which are arbitrary in their application as trademarks for the goods of the respective parties.

■ While there are specific differences between the marks in issue which are apparent in a side-by-side comparison, this court does not consider such differences as being determinative of the issue of likelihood of confusion, mistake or deception of purchasers. See Rex Shoe Co., Inc. v. Juvenile Shoe Corp., 273 F.2d 179, 47 CCPA 748; Finn v. Cooper's Incorporated, supra.

■ We think it only reasonable to require that appellee, as the late comer in the field, should have the burden, in

selecting a trademark, of maintaining such a clear degree of distinctiveness that confusion, mistake or deception would not be likely.

■ We find the marks in issue so similar that we think a prospective customer of appellee's goods marked with its symbol would be likely to associate such symbol with appellant's mark and would be likely to consider that appellant was the source of goods so marked.

We therefore reverse the decision of the Trademark Trial and Appeal Board.

Reversed.

ALMOND, Judge (dissenting).

It is with deference that I find myself in dissent from the views expressed by the majority opinion.

The respective marks are obviously different. I have difficulty construing the border around the "I" in appellee's mark as an "O". It seems to be what it is alleged to be—a decorative border. Appellee has explained that the "I" is derived from "Intermetall G.m.b.H.," a German affiliate, which would negative any assumption of an intent to palm off appellee's goods as those of appellant.

The respective goods are different. Appellant's products are primarily glass, but include plywood panels. The closest similarity in goods is between appellant's glass envelopes for vacuum tubes and the semi-conductor transistors and diodes of appellee. There is no evidence in the stipulated testimony to show that the date of first use by appellant on vacuum tubes precedes appellee's date. But even if appellant is the first user, semi-conductors are so vastly different from tubes requiring glass envelopes that a purchaser would not be likely to be confused or mistaken as to origin.

The purchasers are discriminating in this field. Those who purchase glass envelopes from appellant would be manufacturers of vacuum tubes. Purchasers from these manufacturers would be discriminating enough to know the difference between vacuum tubes and transistors.

The majority appears to rely on the testimony of appellant to the effect that its research and development effort is expected to extend the use of glass and plastic in electronic fields. While appellant may reasonably extend its mark into related fields, there is nothing to indicate even an interest in semi-conductor components. The record does not show that glass envelopes and plastic bases are used in semi-conductor devices, a protective vacuum apparently not being required. Moreover, the record fails to show that glass and plastic, the materials on which research and development are directed, are used in transistors or diodes of the type used by appellee.

I would affirm.